[Civ. No. 18390.   Second Dist., Div. Two.   Dec. 27, 1951.]

McCORD COMPANY (a Corporation), Respondent, v. L. A. PLOTNICK et al., Defendants; BEN LOCKER et al., Appellants.

Jacob Chaitkin and Rose Hemperley for Appellants.

Irving M. Walker, John L. Martin and Mark Mullin for Respondent.

THE COURT.—From a judgment in favor of plaintiff in an action for unfair competition, defendants appeal.

Plaintiff publishes, five times a week at three points on the Pacific Coast, a newspaper known as McCord's Daily Notification Sheet containing credit items of interest to banks, collection agencies, mercantile firms and other businesses. The information is collected by employees and correspondents. Plaintiff also publishes five times a week a textile edition of its newspaper containing those items from its general edition which are of interest to the textile trade in Southern California. The cost of these publications averages $10,000 monthly.

Defendant Ben Locker is the president of defendant West Coast Textile Corporation which publishes three times weekly to its subscribers a paper called "Credit Briefs." The instant action was instituted to restrain defendants from copying or pirating items from plaintiff's newspaper for publication in Credit Briefs, and for damages for the alleged diversion of plaintiff's customers.

The only question raised by the appeal is whether the decision of the United States Supreme Court in *International News Service* v. *Associated Press*, 248 U.S. 215 [39 S.Ct. 68, 63 L.Ed. 211], is determinative of the issues in the instant action or whether, as contended by defendant, there are basic factual differences in the two cases which render that decision inapplicable.

In the cited case the parties were competitors in the gathering and distributing of news to newspapers throughout the United States. The International News Service took news from bulletins and early editions of eastern newspapers serviced by Associated Press and telegraphed it for publication in western papers served by the former, with the result that because of the time differential and other factors the pirated news was in the hands of International News Service readers simultaneously with the service of its competitor, and occasionally even earlier. In holding such practice to be unfair competition the court said: "In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expendi-

ture of labor, skill, and money and which is salable by complainant for money, and that defendant, in appropriating it and selling it as its own, is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members is appropriating to itself the harvest of those who have sown. Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not, with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business.'' (P. 239 [248 U.S.].)

Defendants maintain that (1) they are not competitors of plaintiff; (2) plaintiff could have copyrighted its material; (3) there is no element of fraud and deception and that these factual differences in the instant case make the principles of the International News Service case inapplicable.

Defendants admit that both parties publish credit information of interest to the textile trade but assert they could not be competitors because plaintiff's textile edition carries ten times the number of items appearing in Credit Briefs and defendants offer other services not furnished by plaintiff such as checking credits, collecting accounts and publishing a Buyers Directory. Such contention is untenable. A salesman employed by plaintiff testified that he called upon 400 to 500 firms soliciting subscriptions to plaintiff's textile edition; that he was informed ''they did not need our service because they had a similar service to ours'' which was Credit Briefs of the West Coast Textile Association. This evidence sustains the finding that plaintiff and defendants are competitors.

It is undisputed that defendants copied items from plaintiff's publication which they published in their Credit Briefs. Defendant Ben Locker testified they did not have any representatives or agents working in Los Angeles collecting credit information on their behalf and that they had no correspondents outside the county of Los Angeles who examined court records. Defendants took material acquired by plaintiff as the result of organization and the expenditure of labor, skill and money and appropriating it without expense on their part,

offered it to their subscribers as their own, diverting customers from plaintiff to themselves.

■ Also without merit is defendant's contention that because plaintiff could have copyrighted its material and because there is no evidence of fraud or deception there is a fundamental distinction between the instant case and that of the International News Service. In the latter decision the court stated it was not a question of property in news matter at common law or the application of the Copyright Act upon which the case turned but upon the question of unfair competition in business. In a court of equity "if that which complainant has acquired fairly at substantial cost may be sold fairly at substantial profit, a competitor who is misappropriating it for the purpose of disposing of it to his own profit and to the disadvantage of complainant cannot be heard to say that it is too fugitive or evanescent to be regarded as property. It has all the attributes of property necessary for determining that a misappropriation of it by a competitor is unfair competition because contrary to good conscience." (P. 240 [248 U.S.].) The court further pointed out that in addition to the misappropriation there were elements of false pretense and false representation but those elements, although they accentuate the wrong, are not the essence of it. Defendant Locker admitted they had been copying items from plaintiff's publication for the past 15 years; that they had not subscribed to it because he had been informed that plaintiff would not sell its publications to West Coast Textile Association. ■ Moreover, in an action for injunctive relief against unfair competition it is unnecessary to prove that defendant's conduct was fraudulent since Civil Code, section 3369, declares that unfair competition shall "include unfair *or* fraudulent business practice." (*Wood* v. *Peffer*, 55 Cal.App.2d 116, 124 [130 P.2d 220].)

■ Defendants also assert that the award of damages was barred by plaintiff's laches since it had knowledge and proof that defendants were copying items appearing in the McCord publication as early as 1944, but at no time did plaintiff object or notify defendants to desist; the first intimation they had of any objection on the part of plaintiff was the filing of the suit whereupon defendants immediately discontinued their practice and subscribed to other agencies. Plaintiff's witnesses testified that because of the similarity in style of the credit items appearing in their publication and in defendants' Credit Briefs it had reason to suspect for some time that

defendants were pirating these items. However, there is no evidence that plaintiff had legal proof of defendants' piracies until after the lapse of a period of time during which fictitious items were inserted in its publication which thereafter appeared in Credit Briefs. Approximately two months later plaintiff filed this action. The finding of the existence or nonexistence of laches by the trial court from substantial evidence will not be disturbed. (*Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 734 [134 P.2d 777].)

Finally defendants contend that the damages are unfair and inequitable. Plaintiff and defendants are the only publishers in this area of a publication containing credit information of interest to the textile trade. Plaintiff's witness testified he had a definite recollection of having contacted 105 firms which informed him they were not interested in subscribing to the McCord publication because they were subscribers to Credit Briefs; that he had called upon 300 or 400 other firms, of which he had no specific or independent recollection, which told him they did not need plaintiff's service because they had a similar service which they stated was Credit Briefs. Such evidence supports the finding of the court as to the amount in which plaintiff was damaged.

Judgment affirmed.

A petition for a rehearing was denied January 16, 1952, and appellants' petition for a hearing by the Supreme Court was denied February 21, 1952. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.