[Civ. No. 22087. Second Dist., Div. Two. July 16, 1957.]

PAUL A. HESSE et al., Respondents, v. GEORGE GROSSMAN, Appellant.

Murray Jackson for Appellant.

Laurence J. Rittenband and Morris Kastle for Respondents.

MOORE, P. J.—From a judgment for damages in the sum of $4,700 and for an injunction against defendant Grossman permanently enjoining him from reproducing or dealing in any of the three-dimensional pictures produced by respondents, comes this appeal.

Paul A. Hesse since 1949 has been and now is engaged in the experimentation with and improvement of the French camera, preparatory to the manufacture of three-dimensional pictures and photographs. They are made after an ingenious fashion and since 1953 respondents have more particularly manufactured pictures depicting religious themes. At great expense, Hesse assembled the sets and objects to be used in making three-dimensional pictures. He was joined by one Harvey Prever who is part owner of the Three Dimensional Corporation. Together they improved the patented camera. They made it so that it took three-dimensional pictures. After designing and building elaborate miniature stage sets, they made many photographs in order to obtain the most artistic

and desirable picture. Much time and money were consumed in the creation and assembly of the materials used and in lighting and photographing the sets. For illustration: in preparing to make a picture of "The Last Supper" they employed a New York sculptor who modeled Christ and His disciples at the Supper against the background appearing in the great work of Leonardo da Vinci. Exclusive of the time of Hesse and Prever in that work, the cost to them of that picture alone was $5,000.

After a photograph has been taken, the original film is sent to a film laboratory for development. Numerous duplicate slides may be obtained from the master, the original always being used from which the duplicates are processed. The duplicate slide or transparency is then laminated between panes of glass. The top pane, or lenticular glass, contains screen coordinates which are instrumental in producing the three-dimensional effect. Thereafter the duplicate slide is mounted in a picture frame to which is attached a shadow box. The three-dimensional effect is produced when the bulb behind the picture is lighted.

Photographs made by respondents copied and pirated by appellant included The Last Supper, Crucifixion, Lady Fatima, and Lady Guadalupe. All except the Last Supper were Hesse's own artistic conception and were not copied from any particular painting. At times a statuette was purchased or borrowed and the remainder of the scene was built around it. The products of respondents are of unique design and have never been previously distributed.

After Hesse and Prever had perfected the photography of the religious subjects, Three Dimensionals granted to Victory Vending Company exclusive rights to sell the pictures throughout the United States and it in turn appointed Monique Pictures Corporation as its exclusive distributor in the 16 western states. Pursuant to its contract, Victory purchased the duplicate slides from Three Dimensionals at $5.00 each, prepared the frames and installed them in the shadow boxes. Prior to the trial, Victory had expended $37,000 in constructing a film laboratory wherein to make the duplicates from the originals. Also, the distributors have invested in advertising and promoting the pictures and creating a consumer demand therefor in excess of $50,000. Such expenditures were in a large measure made in California where the pictures have become known and accepted as creations of Hesse.

As to appellant Grossman, he had been previously employed

as a salesman by one Victor Ansaldo who had rented a three-dimensional camera from Hesse and made pictures of his own. When he moved to San Jose, Grossman took over the premises formerly occupied by his employer in Los Angeles. He had never used the three dimensional camera which had been improved by Hesse and Prever, but he merely purchased at retail the three-dimensional religious pictures that had been created by Three Dimensionals, Inc., and removed a duplicate of the mother slide from the shadow box, used it as a master from which to make duplicates by "contact printing" whereby an unexposed piece of film was placed on the master and light was passed through. The reproduction resulting from such process was inferior to the copies processed from the original slide.

Appellant knew that the slides which he copied had been created by Hesse. Also, his distributors had the same knowledge and they and appellant allowed the ultimate purchasers to believe they were buying copies of the three-dimensional religious photographs. Such incited belief was important in that Paul A. Hesse's name had become synonomous with superior quality in the production of such pictures by reason of their excellence and of the extensive advertising of respondents. It was proved also that some of plaintiff Monique's distributors had lost customers because Grossman's distributors were able to sell at a lesser price.

Now, appellant has emphasized certain issues that are not significant in this controversy as appears from the following findings:

"That the defendant George Grossman had committed acts of unfair competition against the plaintiffs and had engaged in fraudulent trade practices against the plaintiffs in copying and simulating religious three-dimensional pictures manufactured and distributed by the plaintiff and diverted customers from the plaintiffs to himself.

"That the three-dimensional pictures being distributed and sold by such defendants, and each of them, are calculated to deceive and mislead the purchasers and consumers of plaintiffs' pictures and actually has deceived and continues to deceive and mislead the purchasing public and caused them to buy the inferior pictures sold by such defendants in the belief that they are products manufactured, sold and distributed by the respective plaintiffs; that thereby the general reputation of said pictures of the plaintiffs has been injured and will continue irreparably to be injured thereby."

The evidence is ample to sustain such findings. Grossman violated the rules of common honesty and accepted business ethics as codified in the Civil Code, section 3369, subdivision 3. His proceeding without seeking legal advice, his copying the three-dimensional religious pictures and so copying them as to make them appear as creations of Hesse; his attempt to purchase the slides directly from the very laboratory with which Hesse had contracted to process the original films; his indication that he would employ the same laboratory to do his developing and processing; his removal of the slide and using it as a master to duplicate it by "contact printing"; his counterfeiting respondents' pictures—these were such acts under the circumstances of the case as were clearly calculated to convince a disinterested mind that his intentions were seriously resolved to undermine the established good will of respondents, to deceive the purchasers of the latter, to pirate upon their business; and to injure their reputation by selling an inferior product as a Hesse creation. Appellant's sales of the three-dimensional pictures were facilitated by the facts that he incurred no expense in creating them or in constructing a plant or equipment for their production.

Appellant contends that because respondents had no patent for their creations and that they had obtained no trademark, the pictures were in the public domain and could be legally copied by any person; that since they were intentionally made public, appellant was free to reproduce them without responsibility to respondents, citing Civil Code, section 983. But that is not the issue raised by the pleadings or determined by the findings. The pictures had long been identified with Paul A. Hesse's studio and as having been produced by a gifted photographer. Such reputation had grown among jobbers and wholesalers. It was impossible for the average layman to tell the difference between them. The issue here is whether appellant was guilty of fraudulent trade practices and whether the pictures he had made deceived and misled the purchasers of respondents and caused the public to buy the cheap merchandise sold by appellant. That the latter was guilty was established by the facts herein recited, by the testimony that Hesse's name was a great asset when used as the creator of the three-dimensional pictures. Appellant violated Civil Code, section 3369, subdivision 3, when he engaged in unfair business practices. His conduct was not unlike that of the defendant in a recent case tried in the United States District Court. There the defendant had exactly copied and foisted upon the public

in unfair competition with plaintiff an ash tray previously and currently designed, manufactured and sold by the plaintiff. The only claim asserted to the court was for unfair competition. In the course of his opinion, after reviewing the authorities, Judge Mathes said: "The casebooks are replete with cases which hold that the essence of unfair competition lies in the simulation and imitation of the goods of a rival or competitor with the purpose of deceiving the unwary public into buying the imitation under the impression that it is purchasing the goods of such competitor. (*American Philatelic Society* v. *Claibourne* (1935), 3 Cal.2d 689 [46 P.2d 135].) . . .

"But where 'likelihood of deception' and hence a secondary meaning is shown, the prior user is entitled to injunctive relief under California law without the necessity of establishing actual injury to his business or reputation. 'If articles which are not produced by him are attributed to him or associated with his name, the injury is obvious.'

"The affidavits which have been filed by plaintiff in support of the application for a preliminary injunction serve as proof . . . that a secondary meaning as to plaintiff's ash trays has been established to the extent that the ultimate purchaser of defendant's imitations believes he is buying Haeger pottery of this very design, identical in size, shape and color; and if defendant's products are inferior, as is manifest from the exhibits at bar, plaintiff's good will, as well as its trade, will be damaged."

Judge Mathes held that defendant's placing his own name on the bottom of the ash tray was not sufficient to prevent deception and enjoined the defendant from selling in unfair competition with the plaintiff. (*Haeger Potteries, Inc.* v. *Gilner Potteries*, 123 F. Supp. 261, 268, 269.) Likewise, in a controversy between two publications, McCord's Daily published five times a week a Daily Notification Sheet showing credit items of interest to banks and mercantile firms. The defendants published three times weekly a paper called "Credit Briefs" containing credit information of interest to the textile trade and alleged that they could not be competitors because the plaintiff's sheet carried ten times the number of items appearing in "Credit Briefs." Because defendants copied items from plaintiff's sheet into their "Credit Briefs" and thereby diverted customers from plaintiff to themselves, the court held that it was not material that plaintiff had no copyright on its Sheet but was entitled to an injunction against a competitor for misappropriating the contents of its publication for the

purposes of profits to the defendants and disadvantage to the plaintiffs. (*McCord Co.* v. *Plotnick,* 108 Cal.App.2d 392, 395 [239 P.2d 32].) ▉ Any institution that sells merchandise or services to the public is entitled to be protected against·a competitor who by a fraudulent practice diverts business of such institution and causes it to flow to the wrongdoer or to others and will be enjoined from committing such wrongful acts. (*Wesson* v. *Galef,* 286 F. 621; *Scudder Food Products* v. *Ginsberg,* 21 Cal.2d 596 [134 P.2d 255] ; *Haeger Potteries, Inc.* v. *Gilner Potteries, supra,* p. 270.)

As in the Haeger decision, appellant contends that he did nothing more than copy the "functional" features of respondents' work and that such plagiarism is not actionable because no secondary meaning can be attributed to functional features. The same contention was made in the Haeger case but it was rejected. The court held that innumerable designs could be used to make a tray to hold ashes, the functional purpose, without copying the plaintiff's design. It is at once apparent that our appellant could have made religious sets of his own design and have photographed them without invading the legal and equitable rights of respondents.

▉ In the light of the record, appellant's contention that the award of damages in the sum of $4,700 was excessive is a feeble reminder that the amount thereof is measured by only the actual damage suffered by virtue of profits on sales actually diverted from respondents.

Appellant would have us rewrite the judgment* by prescribing how appellant may continue his acts of unfair competition and cites authorities which are not in point.

▉ The court made positive findings that respondents' products are unique in design; that defendants committed unfair practices and copied respondents' products and thereby injured the general reputation of respondents' pictures and caused them to suffer great detriment and diminution in their profits. In view of such findings, the injunction against appellant is just.

But appellant argues "the Court should not grant an in-

---

*The lower court restrained the defendant as follows:

"It is hereby ordered, adjudged and decreed that defendant George Grossman, his employees, agents, servants and sales agents be, and they are hereby, perpetually enjoined and restrained from in any manner directly or indirectly copying, reproducing or counterfeiting, and from manufacturing, distributing, selling, offering for sale, or in any manner, or anywhere dealing in any of the three-dimensional pictures, produced, or reproduced, manufactured, sold or distributed, by the plaintiffs or any of them."

junction requiring defendant to refrain from all competition with plaintiffs with respect to these pictures. Since the photographs are in the public domain and the mere reproduction of them is not in and of itself unlawful or unfair competition . . . the Court should at least modify the injunction to require defendant to merely distinguish his reproductions from the plaintiffs' production so as to avoid any possibility or likelihood of customer-confusion.''

This is equivalent to saying: "Let me keep on copying Hesse's photographs, taken at great expense to him, and put them in a different frame. The public won't be confused.''

But the evidence shows that appellant *was* putting his pirated reproductions in a different frame and the public was *still* confused. There is nothing in the injunction that prevents appellant from designing and constructing his own miniature stage sets, photographing them, making copies and selling them as his own. All it does is to prevent appellant from copying Hesse's photographs and selling them as appellant's own. This is as it should be.

Affirmed.

Fox, J., and Ashburn, J., concurred.