Paul A. HESSE, Three Dimensionals, Inc., and General Displays Co., Plaintiffs,

v.

Lee BRUNNER and William H. Joachim, individually, and as co-partners, doing business under the name and style of Formed Products Co., Consolidated Home Equipment Corp., Household Guild, Inc., Doe I, Doe II, Doe III, Doe IV, Doe V and Doe VI, Defendants.

United States District Court
S. D. New York.
March 31, 1959.

Sidney S. Korzenik, New York City, for plaintiffs.

Sidney Feldshuh, New York City, for defendant, Lee Brunner, doing business as Formed Products Co.

DIMOCK, District Judge.

Plaintiffs move for summary judgment under Rule 56, F.R.Civ.P., in an action based on unfair competition seeking a permanent injunction and damages. Jurisdiction is founded on diversity of citizenship.

Plaintiff, Paul A. Hesse, Three Dimensionals, Inc., a California corporation, produces photographs of certain biblical subjects which, when illuminated from behind, can be seen in tri-dimensional depth. The photographs which are the subject of this action are titled "The Crucifixion", "The Prince of Peace", "The Last Supper" and "Our Lady of Fatima". To achieve this particular effect plaintiff had three-dimensional dioramas or tableaux constructed of the various scenes which are the subjects of the photographs. From these scenes plaintiff made the photographs with a specially constructed three-dimensional camera and thereby obtained an original photographic plate from which duplicate slides could be processed as in ordinary photography. The slides were then fixed upon what an affiant for plaintiff calls a "lenticular transparent screen"—"a transparent plate which is grooved with longitudinal serrations, the surface thus consisting of small prisms"—which serves to emphasize the depth features of the pictures. The whole is then enclosed in a glass plate encasement. This affiant states that "[t]o produce an enhanced effect of tri-dimensional depth in photographs, the subject photographed must itself be tri-dimensional. The same illusion of depth in photography cannot be created if the subject photo-

graphed is in the first instance a flat surface, such as an oil painting."

The production and sale of these pictures began in 1954. Plaintiff General Displays Co., Inc., a Pennsylvania corporation, manages the sales program and is the exclusive distributor for plaintiff Hesse of these three-dimensional pictures of religious subjects throughout the United States. It is alleged that through advertising and sales promotion a national market for the product has been created.

It is uncontradicted that defendant Formed Products Co. is engaged in manufacturing transparencies which have been produced by taking slides out of transparencies manufactured by plaintiff Hesse and using them as master negatives. Slides printed from these negatives are then fixed upon a lenticular transparent screen and enclosed in a glass plate encasement. The result is indistinguishable from plaintiff's product except that it has lost much of its realism in the removal of the slide one more step from the diorama.

It is alleged that defendant Formed Products Co. still continues these activities. The other named defendants are alleged to be and, at all the time mentioned in the complaint, to have been, "purchasers from defendants Formed of pictures duplicated by said defendants from pictures originally made and sold by plaintiffs, which said purchasing defendants have distributed, and now are distributing and selling". It is further alleged that all the defendants either had notice of plaintiffs' claim of unfair competition or knowledge of the facts as above stated.

The complaint attempts to state a claim for unfair competition under two theories under the New York law, which is made applicable by Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. First, it is alleged that defendants' activities mislead members of the public and cause them to purchase the product sold by defendants in the belief that plaintiffs were the actual source. The second theory is that of misappro-priation, given classic expression in International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211. That case has been approved by the New York decisions. See Fisher v. Star Co., 231 N.Y. 414, 132 N.E. 133, 19 A.L. R. 937; Dior v. Milton, Supreme Court, Sp.Term, New York County, 9 Misc.2d 425, 155 N.Y.S.2d 443, affirmed 2 A.D.2d 878, 156 N.Y.S.2d 996.

The motion for summary judgment is predicated on the assumption that under the two above-stated theories there is no question of fact requiring a trial. A third ground urged in support of this motion is that defendant defaulted in answering interrogatories.

■ There is hardly a serious attempt to show that defendants have actually represented their goods as being the product of plaintiffs. The only theory on which a plausible argument could be made that the public were misled into thinking that defendants' product had been produced by plaintiffs would be the theory of so-called "secondary meaning". The scope of the phrase "secondary meaning" was expressed by Judge Learned Hand in Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, 300, where he stated:

"[A]n absolute condition to any relief whatever [is] that the plaintiff in such cases show that the appearance of his wares has in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that the public cares who does make them, and not merely for their appearance and structure. * * * The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source. Unless the plaintiff can answer this question he can take no step forward; no degree of imitation of details is actionable in its absence."

■ Upon the facts before me I am unable to say that plaintiffs have suffi-

ciently answered the question posed by Judge Hand to justify the granting of a summary judgment. Also, if defendants might conceivably prove a defense, summary judgment must not be granted, see Amerian Auto. Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, 775, and they should be given an opportunity at trial to negate the claim of "secondary meaning".

█ As above stated, plaintiffs' second theory that defendants misappropriated for their commercial advantage a right which equitably belonged to plaintiffs has for its foundation International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211. There it was held that news gathered by a news gathering institution, even though not copyrighted, could not be lawfully appropriated by a competitor. The court was at great pains to show that news as between competing news gatherers was of a character entirely different from the ordinary literary or artistic property which is the subject of copyright. Unless we proceed upon the theory of a secondary meaning of plaintiffs' illuminated pictures, a theory that I have already eliminated, the case at bar is the type form of the appropriation by B of an uncopyrighted photograph taken by A. There is no contention that plaintiffs have any proprietary right in the process of making a model, photographing it with a three-dimensional camera, combining the resultant transparent photograph with a lenticular transparent screen, and finally, illuminating it from behind. No claim is made that plaintiffs would have any rights against someone who simply used that process. The complaint is solely that defendants are selling copies of a picture that plaintiffs had made by the first steps of that process.

The Copyright Act stood ready to protect plaintiffs against this use of their pictures and they failed to take advantage of it. Even where the original model for the diorama was the work of someone else, as in the case of Leonardo da Vinci's Last Supper, the picture of the diorama would be copyrightable.

Section 7 of the Copyright Act, 17 U.S.C. § 7, provides "Compilations or abridgements * * * or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works * * * shall be regarded as new works subject to copyright under the provisions of this title". Plaintiffs' photograph of plaintiffs' diorama of the Last Supper could have been copyrighted in the same way that an engraving of a painting in the public domain may be copyrighted. Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 191 F.2d 99. The Federal Copyright Act is the full measure of protection to be given to copyrightable material. The states through their legislatures or courts cannot add to or subtract from that protection. As was said by Judge Learned Hand in National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594, 603: "There could be no misappropriation of any 'strips,' once published, if they were not copyrighted; as we said at the outset, they went at once into the public domain and anyone might copy them. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, is authority only for the situation there at bar, as has been over and over decided."

Plaintiffs cite in support of their motion for summary judgment the case of Hesse v. Grossman, where the District Court of Appeal in California, 152 Cal. App.2d 536, 313 P.2d 625, sustained a judgment for damages and injunction in favor of one of the plaintiffs here and involving the very products here concerned. The lower court had found that the pictures had long been identified with Paul A. Hesse Studio as having been produced by a gifted photographer. In the case at bar it is still open to plaintiffs to prove upon the trial, if they can, that their product—frame, lighting and picture in toto—has obtained a secondary meaning in the mind of the public and that the public cares who makes it and not merely for its appearance and structure.

The third ground urged in support of this motion is that defendant Brunner has failed to serve answers to interrogatories served on January 8, 1957. I shall treat this as a motion under Rule 37(d), F.R.Civ.P., to enter a judgment by default. No attempt is made to excuse this failure and the answer of defendant Brunner will be stricken out unless within ten days after the appearance of a note of this decision in the New York Law Journal defendant Brunner serves answers to the interrogatories.

Plaintiffs' motion for summary judgment denied. Defendant Brunner's answer will be stricken out unless, within ten days after a note of this decision in the New York Law Journal, he serves answers to the interrogatories which have been served upon him.

So ordered.