**DESCLEE & CIE., S. A., a foreign corporation, Plaintiff,**

**v.**

**Frederick E. NEMMERS, and Erwin E. Nemmers as executor of the Estate of Mechthild Nemmers, Partners under the firm name and style of M. L. Nemmers Publishing Co., Defendants.**

**No. 57–C–107.**

United States District Court
E. D. Wisconsin.

Jan. 20, 1961.

Steven E. Keane and John R. Collins, Milwaukee, Wis., for plaintiff.

Harry Primakow and Erwin E. Nemmers, Milwaukee, Wis., for defendants.

GRUBB, District Judge.

This is an action for unfair competition to enjoin the alleged photographic duplication of publications of the plaintiff and its licensees and for an accounting and damages in conjunction therewith. After denial of plaintiff's and defendants' motions for summary judgment, the case was tried to the court on the issue of liability only.

Plaintiff, Desclee & Cie., S. A., hereafter referred to as "Desclee," is a Belgian corporation with principal offices at 13 rue B. Frison, Tournai, Belgium. Among other works, Desclee publishes the Liber Usualis, a collection of Gregorian chants. This work appears in a number of editions in Latin and in English. In issue here are the English editions of 1950 and 1953. The 1953 edition of the Liber Usualis indicates that the work contains an Introduction and Rubrics in English and that it is edited by the Benedictines of Solesmes. It bears the notice, "Copyright 1952 by Desclee & Co., Tournai (Belg.)."

Desclee has also printed a publication entitled Plain Song for Schools, in two parts, which consists of a collection of masses and occasional chants. The manuscript for this work was submitted to the Abbey of Solesmes for review, approval, and editing. This book was originally published by Rushworth & Dreaper Ltd. of Liverpool, England, in 1930. Copies of this work used on the trial bear 1933 and 1934 copyright notices by Desclee & Co., Tournai (Belg.).

A photolithographic reproduction of pages of Plain Song for Schools was published in a paper-bound work entitled Standard Gregorian Chants by McLaughlin and Reilly Company of Boston, Massachusetts. The 1946 edition of this work bears the following notices:

"Solesmes rhythmic signs used throughout by special permission of Desclee & Co., Tournai, Belgium"

and

"Contents and Collection Copyright MCMXLVI by McLaughlin and Reilly Co., Boston, Mass. International Copyright secured Made in U.S.A."

The 1946 edition of Standard Gregorian Chants is no longer offered for sale.

In addition to the notice contained in the 1946 edition of Standard Gregorian Chants regarding use of the Solesmes rhythmic signs, a letter from Desclee to McLaughlin and Reilly regarding royalties due on this work was offered to show a licensing agreement between them. Desclee's witness believed, but could not testify with certainty or from his own knowledge, that no further editions of Standard Gregorian Chants were published following that of 1946 and prior to 1953 and that a transfer of copyright from Desclee to McLaughlin and Reilly took place in 1953. He stated that there might have been additional printings of this publication during these years. There is no evidence indicating whether subsequent printings, if any were made, were identical with or differed from the 1946 edition, nor does the evidence establish that the copyright to the 1946 edition was transferred to Desclee.

A revised edition of Standard Gregorian Chants was published by McLaughlin and Reilly in 1953. It bears a 1953 copy-

right notice by Desclee and was printed in Belgium.

The Abbey of Solesmes reviewed, approved, and corrected proofs of certain chants published by Desclee which were included in an unspecified edition of Standard Gregorian Chants.

The principal sources of the Gregorian chants appearing in the Liber Usualis are the Vatican editions of the Graduale Romanum and the Antiphonale Romanum, published in 1908 and 1912, respectively. Some melodies are the work of the Abbey of Solesmes. The musical notes or neums of the melodies found in the Liber Usualis, in Plain Song for Schools, and in Standard Gregorian Chants are annotated by certain signs denoting rhythm; namely, the "mora" or dot, the "ictus" and the "episema" or vertical and horizontal lines or dashes, and the comma. The annotations of the melodies with these rhythmic signs is done in accordance with the Solesmes theory of performance of the chants.

The Solesmes method or system of rhythmical annotation is based on a study of manuscripts of liturgical music dating from the tenth to the fifteenth century. The monks at the Abbey of Solesmes undertook this research to rediscover the original system of rhythmical annotation which had been forgotten. They devised a system of markings to make clear the ancient rhythm and to restore its manner of performance. The Solesmes method is one of several systems worked out for this purpose. Notwithstanding some criticism of the Solesmes method, defendant, Erwin E. Nemmers, acknowledged in his book, Twenty Centuries of Catholic Church Music, that the Solesmes school is commonly followed and that "the Solesmes performance (and rhythmic theory) results in a fine piece of artistry."

Raymond LeRoux, a monk at the Abbey of St. Pierre, Solesmes, France, prepared the plan, composition, and editing of the manuscripts of the melodies of the chants printed by Desclee in which paleographic experts had placed the rhythmic signs. The manuscripts thus made ready by the Abbey were transcribed and prepared for printing by about twenty men under the direction of Henri LeMaire who was chief of the musical typography section of Desclee at the time of the printing of the Liber Usualis and Plain Song for Schools. Each page of the handset musical typography required about four hours of work.

Under a contractual agreement, effective at all times pertinent to this suit, between Desclee and the Abbey regarding the preparation and printing of annotated Gregorian chant editions, Desclee is granted exclusive printing rights for said chants, and the Abbey is to receive a stated remuneration as well as certain royalties on sale of publications containing annotated chants by Desclee or by third parties authorized by Desclee. Under this contract Desclee is charged with taking all necessary steps to prevent infringing or unauthorized reproductions of the rhythmical signs of Solesmes.

Desclee's American customers were stated to include the Gregorian Institute of America, Toledo, Ohio; McLaughlin and Reilly Company of Boston, Massachusetts; Fisher Brothers of New Jersey; and congregations and institutions not otherwise identified. The publication Standard Gregorian Chants, editions of 1946 and 1953, bears the legend, "For Schools Churches Seminaries Convents."

Defendants are partners and do business as publishers under the firm name of M. L. Nemmers Publishing Company at Milwaukee, Wisconsin. They publish and offer for sale a paper-bound, 24-page work entitled Gregorian Chants consisting of 121 annotated chants. This publication bears a 1956 copyright notice by M. L. Nemmers Publishing Company. Approximately 2,000 copies thereof have been printed.

Defendants' publication was prepared by a photographic duplicative process from materials clipped from the pages of other books which were assembled according to defendants' arrangement and mounted on a backboard. Defendants' testimony indicated that the preparation

of this work required about 400 hours and that it was intended for use by children. No particular or potential purchasers of Gregorian Chants were identified.

On the trial, Desclee offered evidence to show that the chants contained in the Nemmers' publication were photocopied from books printed or published by Desclee. Raymond LeRoux and Henri Le-Maire testified in the form of answers to interrogatories that all but approximately twelve lines of defendants' book were taken from Desclee publications including the Graduale Romanum, the Liber Usualis, editions of 1950, 1953, or earlier, and from Plain Song for Schools. Desclee's witness on the trial, Gustave Pairoux, the President of Desclee Co., Inc., a New York corporation which is the distributor of Desclee books, testified similarly as to the source of chants contained in Gregorian Chants.

These witnesses based their identification on a comparison of the accused material with its claimed sources. They demonstrated substantial identity of the copy and its source as to text; melody, including annotation; and general typography, including large Roman numerals and capital letters found at the beginning of individual chants. The latter type characters were stated to have been specially created for and unique with Desclee. The witnesses further pointed to minute details, such as defects in type characters and in the continuity of lines of the staff found in the source and appearing similarly in the Nemmers' work.

Desclee also relied on admissions by defendant, Erwin E. Nemmers, that Standard Gregorian Chants, the Liber Usualis, and Plain Song for Schools were some of the sources used in compiling the Nemmers' publications.

Desclee introduced exhibits to further demonstrate its claim as to photocopying. To prepare one of these exhibits, certain chants were clipped from Plain Song for Schools, Part One, pages 1, 2, 4, 5, and 6, mounted on a background sheet of paper, and photographed in diminished size. The resulting photopositive was offered for comparison with the material constituting page one of defendants' book. The other exhibit, prepared in a similar manner, is a photographic positive of the chant "Jesu Redemptor" as found on page 365 of the Liber Usualis, edition of 1959, which was stated to be identical with the 1953 edition. This was offered for comparison with the chant as it appears on page 15 of defendants' publication.

Examination with a magnifying glass of the materials offered for comparison reveals overall substantial similarity of text, melody, annotation, and general typography, as well as of minute details in certain type characters. Differences may be noted in spacing of the notes and text and juxtaposition of text and music as well as in fine details, such as defects in type characters and faults in the print of the lines of the staff appearing in the claimed source, but not in the accused publication, or vice versa.

Desclee explains notable and minor differences as resulting from the exigencies of the photocopy process, from reproduction in diminished size, and from the arrangement of the chants in the accused book. Defendants combined two lines of music as they appear in Desclee publications or in Standard Gregorian Chants to form one line in Gregorian Chants. This practice requires that the custode of the first line forming the first one half of the line in the Nemmers' publication be dropped. The custode, or custos, is the last small note found on a line of music placed there to indicate the pitch of the first note of the next line.

Defendant, Erwin E. Nemmers, who prepared Gregorian Chants for publication, testified that approximately 90 per cent of the material contained therein was photocopied from the 1946 edition of the McLaughlin and Reilly publication, Standard Gregorian Chants. According to this witness, the remaining 10 per cent of defendants' book, which does not appear in the 1946 edition of Standard Gregorian Chants, was photocopied from other editions of this work subsequent to that of 1946 but prior to the 1953 edition thereof to which Desclee holds the copy-

right. Chants falling within the 10 per cent category in question include the following: Chants appearing under the heading of "On Ferials" on page 7 of Gregorian Chants; chants under the heading "Easy Mass" on page 8; the chant beginning with the words "Creator alme" on page 14; three Christmas chants, including that beginning with the words "Jesu Redemptor" which Desclee used for one of its exhibits to demonstrate photocopying, on page 15; the chants beginning with the words "Lumen ad revelationem" and "Exsurge Domine" on page 16; the chant beginning with the words "Virgo virginum" on page 17; the chant beginning with the words "Ascendit Deus" on page 18; and the chants beginning with the words "Jam Sol recedit igneus," "Benedicamus Patrem et Filium," "O quam suavis est," and "Lauda Sion" on page 20 of the Nemmers' work.

In answer to an interrogatory asking whether users of the Nemmers' Gregorian Chants would confuse that publication with the Liber Usualis or Plain Song for Schools, LeRoux stated that "any person well acquainted with chants might well confuse the publications for the reason that such person might very well realize that the rhythmical signs were those of the Abbey of Solesmes which have for many years appeared in Desclee editions."

Desclee contends that the photocopying of its property in the Solesmes signs used in the annotations of Gregorian chants, concretely expressed in Desclee typography, is actionable on principles of unfair competition. Desclee expressly rejects reliance on any rights it may have under the copyright statutes. It seeks independent protection by injunction and the recovery of damages for what it designates the "commercial values inherent in the literary property" rather than for the literary property itself. On the trial, counsel for Desclee took the position that had defendants merely copied the Desclee material, it would look to the copyright laws. Since defendants, at little cost, photocopied this material which Desclee produced at great expense, this manner of taking is claimed to give rise to a cause of action for unfair competition.

■ State law applies to determine the question of unfair competition unrelated to a claim under the copyright law where jurisdiction of the cause rests on diversity. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Fashion Originators' Guild of America, Inc. v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949. The question presented here, whether or not the distribution and sale of a book prepared by photographic reproduction of other published materials may be enjoined on principles of the law of unfair competition, is novel in Wisconsin. This issue and analogous questions have been determined in other jurisdictions.

■ Within the field of the law of unfair competition, there are two categories of cases—the "palming off" or misrepresentation cases, and the unfair taking or misappropriation cases. See Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 1959, 271 F.2d 646, 650. Typical instances of misappropriation cases involve the taking of property in breach of confidence or contract. In exceptional cases, a cause for misappropriation is recognized because the courts, under the particular circumstances of the case, acknowledge an exclusive right in a property or quasi property of such a nature that the mere taking and competitive use thereof is held inequitable and unfair. The leading case of prohibition of the taking and use of such an exceptional property right, under what has been designated the "free-ride" doctrine, is International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211.

■ In support of its claim based on misappropriation under the "free-ride" doctrine, Desclee contends that its evidence establishes the following:

1. Desclee's property or quasi property in the Solesmes rhythmic signs;

2. Appropriation of this property by defendants;

3. Interference with Desclee's contractual relations with the Abbey of Solesmes and with its licensees; and

4. Sales and threat of further sales of defendants' books in competition with those of Desclee and its licensees.

It is the opinion of this court that Desclee has failed to establish that it is entitled to the relief requested. It has not shown that the property it seeks to protect is of such extraordinary nature that its taking under the circumstances of this case constitutes actionable misappropriation. It has not met its burden of proof to show competitive use of the property taken by defendant. The alleged interference with Desclee's contractual relations with the Abbey of Solesmes and with its licensees is not independently actionable under the circumstances of this case. In addition, relief must be denied because the essence of the property Desclee seeks to protect lies within the category of literary property. The exclusive remedy for wrongful copying is that granted by the provisions of the copyright law. 17 U.S.C.A. § 1 et seq.

Based on a careful consideration of the evidence, the court finds that 90 per cent of the accused material was photocopied from the McLaughlin and Reilly publication, Standard Gregorian Chants, edition of 1946, as admitted by defendants. Desclee has not established the particular source photocopied by defendants to obtain the remaining portions of their book. The court further finds that the chants appearing in defendants' book, with the minor exception of those found on several lines of page 24 thereof, have their original source in Desclee typography. These chants in the accused book are substantially similar copies of their source. These findings are based on demonstrated similarities as well as on defendants' claim and some of the evidence offered in support thereof that all of the chants appearing in the Nemmers' publication have appeared without copyright notice in Desclee publications.

Leaving aside the question of the materiality of the actual source of the photocopied reproduction as well as the question of Desclee's standing to enforce any rights in respect to said source as actual or equitable owner thereof, Desclee's interest in the property which was photocopied may be analyzed as consisting of the intellectual content or subject matter; that is, the Solesmes annotations, and the concrete, physical form employed to convey and publish this content; that is, the type characters, layout, and composition of the typography.

The evidence shows that Desclee, the publisher, has purchased the intellectual content or subject matter in question from the authors at the Abbey for a consideration presumably already paid and further to be paid in the form of royalties on the sale of the printed work. Since this same material has appeared in a number of Desclee publications as well as those of third parties, the initial cost of the author's product presumably has been spread over the various works, and the current cost to Desclee consists primarily of the amounts of royalties owing to the Abbey. Although it has been alleged that this material was secured at great expense, the evidence of record leaves this item to speculation. It was not shown that this cost differed from or greatly exceeded that entailed in the publication of any other original musical composition.

The evidence as to the claimed uniqueness and artistic competence of the Solesmes annotations does not suffice to endow this subject matter with such an exceptional character as to give it an additional inherent commercial value, different from that of other literary property of a scientific or artistic nature.

The physical aspects of the typography are also insufficient to create the claimed inherent commercial qualities. The cost to Desclee of the physical form of the typography copied by defendants remains uncertain, particularly in view of the obvious dilution of this cost through re-use of the typography. This cost, insofar as it may be speculated upon, does not appear to be of such magnitude to warrant special protection. Here it is pertinent to note that most of the chants appearing

in the Nemmers' publication were photo-copied from the 1946 edition of Standard Gregorian Chants, which source was a photolithographic reproduction of Desclee type and, therefore, a remote and presumably diminished-in-value fruit of the labors and expense incurred by Desclee in obtaining the subject matter and physical aspects of its property. It may be further noted that while there is an acknowledgment in the McLaughlin and Reilly publication as to the permissive use of the Solesmes signs, the Desclee typography, including layout, composition, and unique type characters, are reproduced therein without public recognition of the source.

The property rights asserted by Desclee are not comparable to those exceptional ones in the International News Service case. That case involved the interest, as against a competitor, in freshly-gathered wire news until such time as the owner thereof had reaped the benefits of intended distribution or publication. This property had been acquired through much labor and at the expense of several million dollars. This investment was jeopardized by defendants' pirating of the product. The court explains its holding as follows in 248 U.S. at page 241, 39 S.Ct. at page 73:

"* * * the view we adopt does not result in giving to complainant the right to monopolize either the gathering or the distribution of the news, or, without complying with the copyright act, to prevent the reproduction of its news articles; but only postpones participation by complainant's competitor in the processes of distribution and reproduction of news that it has not gathered, and only to the extent necessary to prevent that competitor from reaping the fruits of complainant's efforts and expenditure, to the partial exclusion of complainant, and in violation of the principle that underlies the maxim *sic utere tuo*, etc."

The unique nature of the International News Service case has been noted by the courts. In rejecting the view proposed by Desclee here that the law of unfair competition had been liberalized by this case, a recent decision, Speedry Products, Inc. v. Dri Mark Products, Inc., supra, comments in 271 F.2d at page 649:

"* * * Because of the complexity of the facts the case is *sui generis*. Even there the decision was based largely upon fraud * *."

See also G. Ricordi & Co. v. Haendler, 2 Cir., 1952, 194 F.2d 914, 916, wherein it is observed that the International News Service case "is to be strictly confined to the facts then at bar."

■■ Further, Desclee has not established that defendants are making competitive use of their publication as against any publication in which Desclee has actual or equitable rights. There is no evidence that defendants are selling or are contemplating the sale of Gregorian Chants to any of the named customers of Desclee. No customers were identified for the English publication, Plain Song for Schools, or for that of the Boston publisher, Standard Gregorian Chants. Otherwise unidentified institutions do not constitute a market of distribution. While the amount of actual sales is primarily material to the question of damages in an unfair competition case, there must be proof of actual or threatened injury upon which to predicate liability for the tort of unfair competition and to warrant the granting of the equitable remedy of injunction in conjunction therewith.

■■ The Solesmes rhythmic annotations indicating the manner of performance of the Gregorian chants are an integral part of the musical composition which may be copyrightable under the statute. Section 5, Title 17 U.S.C.A. The remedy against unauthorized copying of published literary property must be sought under this law. Continental Casualty Company v. Beardsley, D.C. S.D.N.Y.1957, 151 F.Supp. 28; Globe Newspaper Co. v. Walker, 1908, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096. There is no special reservation of rights in the typography of a published work, and this

may be copied except insofar as the copyright makes copying of the work itself unlawful. G. Ricordi & Co. v. Haendler, supra.

Unfair competition does not lie to duplicate the remedies granted by the copyright law to prevent unauthorized copying or *misappropriation by copying* regardless of the manner in which this is accomplished. A cause for unfair competition may, however, arise collaterally to a copyright claim in respect to published material where it is based on *misrepresentation* as to the source of copied or imitated published material for the purpose of deceiving the public. Becker v. Loew's, Inc., 7 Cir., 1943, 133 F.2d 889; Harms, Inc. v. Tops Music Enterprises, Inc., of California, D.C.S.D.Cal.1958, 160 F.Supp. 77; Continental Casualty Company v. Beardsley, D.C.S.D.N.Y.1957, 151 F.Supp. 28; and G. Ricordi & Co. v. Haendler, 2 Cir., 1952, 194 F.2d 914.

Allegations of the complaint in this case as to unfair competition as well as some evidence produced on the trial suggest possible actionable misrepresentation. The showing does not suffice to meet Desclee's burden of establishing the necessary elements of such an action; that is, secondary meaning of the copied product and competitive use thereof. The general aspects of defendants' book do not resemble any of the publications of Desclee or its claimed licensees. Defendants' assertion that there were more than 5,000 differences between the accused book, Gregorian Chants, and any Desclee Liber Usualis stands uncontroverted. Publication of the Desclee typography without acknowledgment of the source in McLaughlin and Reilly Company's Standard Gregorian Chants militates against a finding that a secondary meaning has attached to the layout, composition, and unique type characters. The similarity resulting from photocopying Desclee typography or photolithographic reproductions thereof of the Solesmes rhythmic signs which had previously only appeared in Desclee publications might cause confusion as to the source of the material, as the witness LeRoux, an author of these annotations, indicated. This conditional opinion, even when coupled with the established similarity between copy and source, does not suffice to meet Desclee's burden of proof as to secondary meaning, essential to actionable misrepresentation or "palming off." The evidence respecting competitive use is also insufficient to entitle Desclee to the requested injunctive relief on this theory.

The conclusions of the court as stated here make unnecessary a determination of the questions reserved above as to the materiality of attributing all of the photocopied material to a particular source or the determination of Desclee's rights to bring this action on behalf of its alleged licensees. The voluminous evidence offered by defendants to establish that the materials which were photocopied were in the public domain was not germane to the issues of this case since Desclee expressly rejected reliance on the copyright laws.

The alleged interference with Desclee's contractual relations with the Abbey of Solesmes is not actionable under these circumstances. Desclee must seek the protection of the work of the Abbey which it agreed to provide under the copyright laws. That this may have been within the contemplation of the authors of these annotations is shown by an answer to an interrogatory furnished by the witness LeRoux, which answer was before the court on prior motions for summary judgment but was not offered as evidence on the trial. There LeRoux states that Desclee has copyrighted the Solesmes annotations. Furthermore, the contract speaks of "infringement" and "unauthorized copying," terms familiar to the copyright law. The contractual relations between Desclee and Rushworth & Dreaper Ltd., the publishers of Plain Song for Schools, or with McLaughlin and Reilly Company are not sufficiently before the court to determine what provisions may have been interfered with by defendants' production of Gregorian Chants.

Desclee claims that the truncation and distortion of its work is actionable on principles of unfair competition. The evidence shows that defendants took clippings from Desclee publications or those of its claimed licensees. This does not establish distortion of the substantially similarly reproduced Solesmes annotations. Desclee's witnesses testified that an inferior work resulted. Defendants testified that their work was superior and of greater use to its intended market. While it may be assumed that a photocopy of a photocopy of the original typography is of a different quality than the original source—and this may be confirmed by a comparison of a print of the typography of any chant as it appears in the original in the Liber Usualis or in Plain Song for Schools with the first photolithographic reproduction thereof in the 1946 edition of Standard Gregorian Chants, and finally with the photolithographic reproduction of the photolithographic reproduction as it appears in diminished size in the accused publication—this court cannot, on the basis of the evidence on this question, decide that there was truncation and distortion which resulted in injury to Desclee's reputation.

Cases cited by Desclee in support of its contentions are not inapposite the conclusions reached here. Cases following the International News Service decision and involving a property right in the publication of news, such as Veatch v. Wagner, D.C.Alaska 1953, 116 F. Supp. 904, and McCord Co. v. Plotnick, 1951, 108 Cal.App.2d 392, 239 P.2d 32 are distinguishable because of the nature of the property right involved. California cases, such as McCord, supra, and Hesse v. Grossman, 1957, 152 Cal.App.2d 536, 313 P.2d 625, are not authority here insofar as they were decided under a California statute creating a cause of action for unfair competition without proof of fraud.

The case of Hesse v. Brunner, D.C.S. D.N.Y.1959, 172 F.Supp. 284, involved analogous questions to those presented by the instant case. This decision is in accord with the conclusions reached here. In the New York Hesse case, plaintiff produced a model which he photographed with a three-dimensional camera. He claimed no right in the method but complained of the copying of the product achieved thereby. The court there held that any protection against copying of the product would have to be sought under the copyright law and that plaintiff had not made a sufficient showing of secondary meaning to entitle him to summary judgment. The court comments on Hesse v. Grossman, supra, involving the same plaintiff and subject matter, and notes that the picture copied in the California case had been identified with plaintiff and had obtained a secondary meaning.

In the early decision of E. P. Dutton & Co. v. Cupples, 1907, 117 App.Div. 172, 102 N.Y.S. 309, the court enjoined the publishing and selling of a publication produced by a photographic duplicative process. This material was not copyrighted and possibly not copyrightable. Notwithstanding the language concerning the appropriation of the skill and labor of another, the decision reveals that essential elements of a cause of action for unfair competition based on misrepresentation were established. The court found that a purpose of the copying of the book, including the distinguishing features of the overall makeup and color, was the deception of the public. No such showing was made here.

Another case involving literary property, cited by Desclee, is Fonotipia Limited v. Bradley, C.C.E.D.N.Y.1909, 171 F. 951, which involved rights arising from the use of plaintiff's phonograph records to produce a matrix from which defendant subsequently produced records which it sold as its own. This case anticipates the "free-ride" doctrine of International News Service. While the decision was overruled to the extent that its holding conflicted with the conclusions of the court in G. Ricordi & Co. v. Haendler, supra, one comment found in the opinion is of significance here. At the time the cause of action arose

in Fonotipia, phonograph records did not enjoy copyright protection. At the time the decision was rendered, this protection had been extended. The court observes in 171 F. on page 963:

"It would seem therefore that the questions raised in the present case may be avoided as to future compositions by copyrighting the original rendition of the song, * * and the disc record by which the rendition is preserved; * * *."

The Cupples and Fonotipia cases were cited by the court in National Pub. Co. v. John A. Hertel Co., 7 Cir., 1939, 105 F.2d 222, 224, involving somewhat similar facts and claims as the instant case and cited by both parties here. In National Pub. Co., plaintiff, which sold a bible of its own, printed another on its electrotype plates for defendant under a contractual arrangement. Defendant later photocopied and sold the bible plaintiff had printed for it. The court held that under these circumstances there was no misappropriation of plaintiff's property. The case was dismissed upon the ground that under these facts the defendants could not trade upon plaintiff's favorable reputation or deceive purchasers as to the source of the product. In the opinion the court notes that but for the prior transactions between the parties "we would have a case at least analogous" to the Cupples and Fonotipia cases. In its analysis of the Cupples decision, the court notes that there a purpose of the copying was a trading upon plaintiff's reputation and confusion of the public. Thus, the court looks to the essential elements of a cause of action based on misrepresentation upon which to predicate the unfair competition. This decision cannot be claimed as authority that the Seventh Circuit has adopted the "free-ride" doctrine as controlling in cases involving published literary property, as contended by Desclee, or that this holding should be declared as the law of Wisconsin.

The case of Capitol Records, Inc. v. Mercury Record Corp., D.C.S.D.N.Y. 1952, 109 F.Supp. 330, affirmed 2 Cir., 221 F.2d 657, involved rights in making and selling records from certain matrices. The district court termed this a property in artistic performance, the rights in which property, unlike those involved in the Ricordi case, survived publication. The appellate court classified the property as noncopyrightable literary property and decided the case on grounds other than unfair competition. In Hebrew Pub. Co. v. Scharfstein, 1942, 288 N.Y. 374, 43 N.E.2d 449, defendant made offset plates of plaintiff's work which was in itself a photographic reproduction of other materials without copyright. Plaintiff failed to show that defendant had appropriated anything of ingenuity or artistic competence, or that there was any passing off, fraud, or interference with its business. Injunctive relief was denied.

This court's decision on prior motions for summary judgment, wherein essential elements of a cause of action were listed, was based on the facts and theory of pleading then before the court. On this trial Desclee has failed to show that its claimed property right differs from that denominated generally as literary property. Desclee has not shown that this property is of such exceptional nature as to bring it within the category of property controlled by the "free-ride" doctrine of the International News Service case. Desclee has further failed to show with sufficient certainty misrepresentation, injury to its reputation or business, and competitive use of defendants' book to entitle it to the relief requested under any theory of unfair competition.

To permit recovery for photocopying of the Solesmes annotations would result in fragmentation and duplicity of causes of action relating to a single right in literary property which has been variously published under copyright notice. This result cannot be obtained particularly where, as here, the copyright holder of the principal work photocopied was not before the court and where Desclee has not shown what, if

any, rights it has with respect to this publication, except to the limited extent disclosed by the notice as to permissive use of the Solesmes annotations and its rights to royalties on the sales of the work.

In addition to the facts found and set forth in the opinion, the court makes the following findings of fact:

1. Plaintiff, Desclee & Cie., S. A., is a foreign corporation engaged in the publication and sale of books of liturgical music.

2. The monks of the Abbey of Solesmes are the authors of Solesmes rhythmic annotations of Gregorian chants.

3. The Abbey has granted to plaintiff exclusive publishing rights to Solesmes rhythmic annotations and receives a royalty on sales of books containing said annotations.

4. Property rights in the published Solesmes annotations fall within the category of literary property and are subject to the copyright law.

5. Plaintiff publishes and sells various editions of the Liber Usualis and prints and holds copyrights to Plain Song for Schools, published by Rushworth & Dreaper Ltd. These publications contain Gregorian chants annotated by Solesmes rhythmic signs.

6. Plaintiff has granted permission for use of Solesmes rhythmic signs in the 1946 edition of Standard Gregorian Chants, containing a photolithographic reproduction of pages of Plain Song for Schools, published and copyrighted by McLaughlin and Reilly Company, and derives royalties from the sale thereof.

7. Defendants are partners doing business as M. L. Nemmers Publishing Company at Milwaukee, Wisconsin.

8. Defendants have published and offer for sale a book entitled Gregorian Chants.

9. Chants contained in Gregorian Chants are photographic reproductions of other published materials. Ninety per cent thereof were photocopied from Standard Gregorian Chants. Almost all chants have their original source in and are substantially similar to chants annotated with Solesmes rhythmic signs printed by plaintiff.

10. Plaintiff has not met its burden of proof to show that the Solesmes rhythmic annotations are identified with it, or that there is likelihood of deception of the public as to the source of defendants' publication.

11. Plaintiff has not met its burden of proof to show competitive use of defendants' publication.

12. Plaintiff has shown no actual or threatened injury to its reputation or business.

The court's conclusions of law are as set forth in the foregoing opinion which, in this respect, complies with Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A.

The clerk is directed to enter judgment in accordance herewith, dismissing the complaint and in favor of the defendants for their costs and disbursements herein.