MUTUAL BROADCASTING SYSTEM, INC., and GILLETTE SAFETY RAZOR COMPANY, INC., Plaintiffs, *v.* MUZAK CORPORATION, Defendant.

Supreme Court, Special Term, New York County, October 3, 1941.

*Leon Lauterstein* [*Leon Lauterstein*, *Emanual Dannett* and *Sheldon Kaplan* of counsel], for the plaintiffs.

*Arthur E. Garmaize,* for the defendant.

HAMMER, J. The plaintiffs Mutual Broadcasting System, Inc., and Gillette Safety Razor Company, Inc., have acquired the exclusive right to broadcast through radio the 1941 World Series games between New York Baseball Club of the American League and the Brooklyn Baseball Club of the National League. The right was acquired by written contract dated April 11, 1941, between plaintiffs and Kenesaw M. Landis, as commissioner of baseball. The Gillette Safety Razor Company agreed to pay baseball for this exclusive right the sum of $100,000, and engaged the facilities and services of the Mutual Broadcasting System, Inc., under which the Mutual System was required to broadcast the World Series over broadcasting stations throughout the United States, Canada, Hawaii and Cuba. In addition to its general expense which is well known to be very large in amount, it engaged the exclusive services of two well-known sports casters, namely, Walter (" Red ") Barber and Robert A. (" Bob ") Elson and a well-known sports writer, William (" Bill ") Corum. The plaintiff Mutual Broadcasting System, Inc., and the defendant must be held to be commercial competitors or potential competitors. Each is using the observed play by play description of the World's Series baseball games for the purpose of building up listening clientele and thus selling their services as part of the commercial enterprise for which each is engaged to their respective customers. The more listeners each obtains the more profit each may expect to receive from the customers who engage their services. The issue here lies directly between them and is not one which involves the rights of the public. The rights of the plaintiff and those of the defendant solely and exclusively are involved. There is a difference between the parties out of which these rights grow. The plaintiff has the exclusive right obtained under the written contract to bring the play by play description of the World Series to radio listeners. It expended large sums of money and laborious effort in competition with other broadcasting systems in order to obtain the right to transmit that description. As a prerequisite it was required to and did obtain a license to broadcast and is subjected to the regulations of public authorities under the Federal Communications Act. The plaintiffs through the expenditure of such money and effort obtained the exclusive right which common sense indicates is of tremendous commercial value and for which the plaintiff, Gillette Safety Razor Company, Inc., paid the compensation stated. It may reasonably be expected that further good will, additional listeners and added profit will result. Additional

profit may reasonably be expected from customers who pay for broadcast radio time and the services of plaintiff's broadcasting system.

Defendant's position is that there is no encroachment upon the right of plaintiffs for the reason that defendant does not attempt to palm off as its own broadcast that which is broadcast by the plaintiffs, but gives to the public the exact broadcast or program as it comes over the air through plaintiff's facilities without any elimination, addition or alteration. This eliminates, says the defendant, any claim of unfair competition. The method of operation of the defendant, as the defendant states it, is as follows:

A broadcast of the World Series games by WOR was picked up over an antenna situated on defendant's building on Fourth avenue, New York city, by means of a conventional radio receiver located in its studio or place of business. From the receiver the sound was transmitted through telephone lines leased by the defendant by a connection from the audio amplifier of defendant's receiving set to the audio amplifier of channel B of defendant's distribution system. Through this means of communication WOR's broadcast left defendant's studio for the purple network and the red network of defendant's system to defendant's subscribers who on that day were using channel B at a point called the program bus. The program bus is the plate where the various leased lines leave the studio. Obviously from the foregoing it appears that as part of the charge to defendant's customers from which it derives its profit, and as part of the commercial enterprise in which it was engaged, it transmitted plaintiff's broadcast to defendant's customers. Plaintiff, which had the exclusive right to broadcast and bring the play by play description of the World Series game to listeners on the radio, objects on the ground that defendant's act is that of an interloper or parasite. Be that as it may, it seems clear that plaintiff's right has been invaded by defendant and that plaintiff is entitled to the injunction sought. There are numerous authorities which sustain the view expressed. They are as follows: *International News Service* v. *Associated Press* (248 U. S. 215); *Associated Press* v. *KVOS, Inc.* (80 F. [2d] 575); *Uproar Co.* v. *National Broadcasting Co.* (8 F. Supp. 358; affd. as modfd., 81 F. [2d] 373; certiorari denied, 298 U. S. 670); *Buck* v. *Jewell-LaSalle Realty Co.* (283 id. 191).

For the foregoing reasons plaintiff is entitled to the temporary injunction sought. Short form order signed.