**G. RICORDI & CO. v. HAENDLER.**

No. 146, Docket 22205.

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1952.

Decided March 11, 1952.

Arthur E. Garmaize, New York City, for plaintiff appellant.

Phillips, Nizer, Benjamin & Krim, New York City, Gerald Meyer, New York City, for defendant appellee.

Before SWAN, Chief Judge, and L. HAND and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from an order denying its motion to enjoin the defendant from selling a book, published by him, which contains the libretto and vocal and piano scores of Verdi's opera, "Falstaff." The basis of the action is that the sale of the defendant's book, which is substantially an exact copy of the plaintiff's, save for the interpolation in the libretto of passages from Shakespeare's play, is "unfair competition" under the law of the State of New York. Jurisdiction therefore rests and must rest upon diverse citizenship, for the plaintiff does not invoke the Copyright Law, 17 U.S.C.A. § 1 et seq. The facts are as follows. In 1893 the plaintiff had possession of manuscripts of an Italian libretto by one, Boito, based upon Shakespeare's "Falstaff," and a vocal and piano score of Verdi's music. It employed engravers to transcribe these manuscripts upon 461 metal plates, which it then used to print a book of an equal number of pages that it published in this country, and upon which it took out a copyright. Although neither the complaint nor the affidavits tell what title the plaintiff had in the manuscripts, we assume, either that Verdi and Boito had conveyed one to it, or that by mesne conveyance it had acquired sufficient interest to support a copyright. The plaintiff concedes—as we infer and as in any event it would be obliged to do—that upon the expiration of the copyright the defendant was free to copy the

libretto and the scores word for word and note for note; but it asserts that he was not free to do so by photographing the pages of its copyrighted book as he did, because the typography was the plaintiff's creation and became in some sense its "property." This typography, it says, being the work of its skilled engravers, was more than the product of ordinary manual craftsmanship, but it was not dedicated to the public when the copyright was taken out on the book.

We will assume arguendo that the case of Dutton & Co. v. Cupples, 117 App.Div. 172, 102 N.Y.S. 309, decided that the plaintiff might have enjoined the making of a photographic copy of its book, had it never been copyrighted. It is true that the facts in that case were not by any means on all fours with those here, for the plaintiff's books there protected were "profusely illustrated with illuminated capitals and type adapted from that used in ancient missals as well as by pictures in colors, some originally prepared by plaintiff's artists and some being copies of well-known paintings." It would be a far cry from a book so embellished to the plaintiff's book, and we have great doubt that the court which decided Dutton v. Cupples, supra, would have found enough distinctive in the plaintiff's typography to sustain a claim of "unfair competition" based upon photographing it. That decision was the nearest that we have found. In some of the others the court thought that the plagiarism went so far that a reader would believe that the copy was the work of the original author. Fisher v. Star Company, 231 N.Y. 414, 132 N.E. 133, 19 A.L.R. 937. In others it went upon the theory that the defendant had procured access to the works plagiarized by inducing a breach of a contract between the plaintiff and a third person. Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 181 N.E. 561, 83 A.L.R. 23. In others the work copied, assuming that it was subject to copyright at all, had not been copyrighted or published in the sense that publication is a dedication.[1] None of the decisions on which the plaintiff relies held that after copyright had expired the "author" may prevent others from copying.

However, even if the law of New York were to that effect, we should feel obliged to disregard it, because the question before us is one of federal law: i. e. Did the plaintiff preserve any rights after publication in the book except those granted by the Copyright Act? We may start with the undoubted postulate that, except for some especial typography used to print the libretto and scores, the plaintiff dedicated all its interest to the public. Moreover, it is equally clear that if the especial typography was itself copyrightable, it too was dedicated to the public, for it was certainly a part of the "work." Therefore, we need consider only the possibility that the typography was not copyrightable. The argument then would be that, since the typography was not copyrighted, the plaintiff did not dedicate it, because no part of a "work" is to be deemed dedicated which the copyright does not cover; and that it was for the state law to decide whether the publication of the book was a dedication of the typography. However, even though the state law held that publication was not a dedication we should feel bound to disregard it, because the question would still be, not one of state law, but of federal law. This is true because the "work," appearing as it did with an unlimited copyright notice, would give notice to the public of a claim to the protection of the Copyright Act over all that appeared in it; and that would imply that, when the copyright expired, the "work" in all its aspects would be in the public demesne. After the copyright did expire the public would certainly understand that they might reproduce the book without any limitation, and if it was permissible to prevent their doing so photographically, that expectation would be defeated. Such a secret limitation upon the apparent dedication of the "work," seems to us inconsistent with the exercise of the other rights of copying which by hypothesis the dedication indubitably would include. Whether this result could be avoided by an-

1. Mutual Broadcasting System v. Muzak Corp., 177 Misc. 489, 30 N.Y.S.2d 419; Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., Sup., 101 N.Y. S.2d 483.

nexing to the copyright notice a reservation of the "author's" rights in the typography we need not say; for there was no such reservation. For the foregoing reasons we hold that the defendant was free to photograph and sell the plaintiff's book.

We do not mean that the defendant could under no circumstances be guilty of "unfair competition" in his use of the "work"; but it would have to be by some conduct other than copying it. Since he confined himself to that and gave notice that it was his product, the Copyright Act protected him. This reasoning applies as well to any rights which may be supposed to flow from the doctrine of International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, although, as we have several times declared, that decision is to be strictly confined to the facts then at bar.[2] So far as Fonotipia Limited v. Bradley, C.C., 171 F. 951 may be thought to conflict with what we are holding, it is overruled.

Order affirmed.

2. Cheney Bros. v. Doris Silk Co., 2 Cir., 35 F.2d 279; R. C. A. Mfg. Co. v. Whiteman, 2 Cir., 114 F.2d 86; Millinery

Creators Guild v. Fed. Trade Commission, 2 Cir., 109 F.2d 175.