CABLE VISION, INC., and Idaho Microwave, Inc., Appellants,

v.

KUTV, INC., The KLIX Corporation, et al., Appellees.

No. 18577.

United States Court of Appeals
Ninth Circuit.

July 15, 1964.

Rehearing Denied Sept. 23, 1964.

E. Stratford Smith, Robert E. Conn, Smith & Pepper, Washington, D. C., George Schiffer, Schiffer & Cohen, New York City, C. G. McIntyre, Parry, Robertson & Daly, Twin Falls, Idaho, for the appellants.

George M. McMillan, Salt Lake City, Utah, Edward L. Benoit, Twin Falls, Idaho, for the appellees.

Before ORR, HAMLEY and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

In response to an antitrust action brought against it, KLIX-TV, appellees here, filed the counterclaim which is the subject of this appeal. Claiming exclusive rights by virtue of contract to the first run of its affiliated network television programs, it asserted that under Idaho law the activities of community antenna operators, appellants here, constituted tortious interference with those contractual rights and unfair competition in that the community antenna receives identical programs broadcast by other and distant stations and distributes them for profit simultaneously with the KLIX airings.

An extended trial was had. The district judge rendered his decision by a written opinion reported in 211 F.Supp. 47 (D.C.Ida.1962). As a preliminary issue and before reaching the merits the District Court concluded that Congress had not pre-empted the adjustment of property rights in the communication field by passage of the Communications Act of 1934. We agree.

On the merits, the District Court granted relief on the alternative grounds that the activities of the antenna service constituted unfair competition and interference with contract under Idaho law. It noted the absence of state statute or relevant decision of the Idaho Supreme Court but nevertheless concluded that Idaho would recognize as part of its common law, claims for contract interference like those asserted by appellees. Additionally the court declared that appellants were guilty of both torts and issued an order based upon both grounds for the issuance of an appropriate injunction to preserve and make effective appellees' exclusive first-run rights to its affiliate network programs as against these appellants (but not against non-commercial individual antenna owners).

Before reaching its conclusion the court dealt at length with communications policy. Although it expressly recognized that Federal Communications policy was " * * * not determinative of the issues of the present case * * " (Cable Vision, Inc., v. KUTV, Inc., 211 F.Supp. 47, 55 [D.C.Ida.1962]), the

court deemed it relevant. The court noted that Congress had as yet refused to extend F.C.C. regulation to the community antenna practice complained of despite specific proposals to the contrary. Nonetheless, the court found Congressional sanction for the result reached because Congress had not sought to " * * * abridge or alter the remedies now existing in the common law or by statute. (Sec. 414)." Cable Vision, Inc. v. KUTV, Inc., supra, 211 F.Supp. at 56.

After the appeal was taken and the matter had been submitted, the Supreme Court decided the companion cases of Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). On the suggestion of counsel for appellants that those decisions settled issues of law relevant to this case and were dispositive of this appeal, we vacated the order of submission and called for supplemental briefs. We also requested that the case of R. C. A. Mfg. Co. v. Whiteman, 119 4 F.2d 86 (2d Cir. 1940), cert. den. 311 U.S. 712, 61 S.Ct. 393, 85 L.Ed. 463, be evaluated to determine if it had new significance in view of the holdings in Sears and Compco. Supplemental briefs have now been filed and the case stands finally submitted.

## II

At the outset, we note and emphasize that the trial court reached its conclusion " * * * without regard to and apart from any question of copyright ownership of particular program content," Cable Vision, Inc., v. KUTV, Inc. supra, 211 F.Supp. at 58. It held,

" * * * as a matter of common law under the doctrines of tortious interference with contractual rights, and under the doctrine of unfair competition as well, that one who contractually acquires, either

expressly or impliedly by reference to a general industry wide custom, the exclusive right to the first call of entertainment programs, is entitled to protection of that valuable economic right, not only against the grantor, but also against acts of third persons which tortiously and unfairly prevent exploitation of the right or diminish its value." Ibid.

■ The unexamined premise in the holding and the cases cited in support of it is that common-law theories of recovery may be asserted to redeem what are in essence copyright interests. As we read Sears and Compco, however, only actions for copyright infringement or such common-law actions as are consistent with the primary right of public access to all in the public domain will lie.

■ In Compco, the court emphasized that the federal policy found in Art. I, § 8, Cl. 8 of the Constitution and in the implementing federal statutes is to allow " * * * free access to copy whatever the federal patent and copyright laws leave in the public domain." 376 U.S. at 237, 84 S.Ct. at 782. The public domain was broadly delineated in Sears: that which is either not copyrighted, not copyrightable or on which the copyright has expired is in the public domain. 376 U.S. at 231, 84 S.Ct. 784.[1] See also Flamingo Telefilm Sales, Inc. v. United Artists Corp., 32 U.S. L.Week 2579 (May 12, 1964). Thus when an article is unprotected by a patent or copyright, state law may not forbid a person not the originator to merely copy and commercially exploit that article, for such a law would enable the originator to accomplish with the left hand of state authority what he was unable to accomplish with the right hand bearing the authority of the primary federal interest. Sears, Roebuck & Co. v. Stiffel Co., supra, 376 U.S. at 232–233, 84 S.Ct. 784. No state intrusion of the

1. The principles announced in Sears and Compco and cited as authority here are equally applicable to patent and copyright law. Compare Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 232–233, 84 S.Ct. 784 (1964) with G. Ricordi & Co. v. Haendler, 194 F.2d 914, 916 (2d Cir. 1952).

federal field is permissible unless the law of the state meshes in purpose and effect with the announced objectives of federal copyright law. Sears, Roebuck & Co. v. Stiffel Co., supra, 376 U.S. at 231, 84 S.Ct. 784. A limited ambit of operation is accorded state law but it may be exercised only insofar as consistent with the paramount federal interest. Compco Corp. v. Day-Brite Lighting, supra, 376 U.S. at 238, 84 S.Ct. 779. Accordingly, the Supreme Court expressly mentioned the state common-law action of unfair competition with the element of "palming off," an element Mr. Justice Holmes, concurring in International News Service v. Associated Press, referred to as " * * * an infusion of fraud * * * necessary to turn a flavor into a poison * * * " so as to permit " * * * a remedy from the law * * * without legislation * * * " (248 U.S. 215 at 247–248, 39 S.Ct. 68, at 75, 63 L.Ed. 211) as surviving its decision.[2] And state courts have subsequently decided that a state action based upon common-law copyright also survives (See Edgar H. Woods Associates Inc. v. Skene, Mass., 197 N.E.2d 886 [May 19, 1964]; Columbia Broadcasting System, Inc. v. Documentaries Unlimited, Inc., 42 Misc.2d 723, 248 N.Y.S.2d 809 [April 14, 1964], a position which finds explicit support in Sears, 376 U.S. at n. 7, p. 231, 84 S.Ct. 784.

### III

Applying Sears and Compco's composite thesis to the case at hand, we view it as dispositive of appellees' two grounds for relief. Save for the limited protection accorded the creator of literary and intellectual works under the Copyright Act or its exceptions—and here appellees concede they are not asserting a claim for copyright infringe- ment—anyone may freely and with impunity avail himself of such works to any extent he may desire and for any purpose whatever subject only to the qualification that he does not steal good will, or, perhaps more accurately stated, deceive others in thinking the creations represent his own work.

Here the District Court enjoined activity that lacked the element of palming off. It is incontrovertible that all broadcasts are received and distributed by the community antenna without any modification of program content; therefore no question of "implied misrepresentation" by failing to give the originator proper credit, a misrepresentation present in International News Service v. Associated Press, supra, 248 U.S. 215, 39 S.Ct. 68 (1918), is involved in this case. We are clear that there is lacking that taint "necessary to turn a flavor into a poison" justifying judicial relief without Congressional authorization. To the extent, then, that the District Court holding extended a new protectible interest beyond what the copyright laws confer, it " * * * interfere[d] with the federal policy * * * of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain."[3] Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 237, 84 S.Ct. 779, 782 (1964). This same principle likewise applies to appellees' claim of contract interference. Parties by the mere expedient of an exclusive contract can not "bootstrap" into existence rights from subject matter which at their source lie in the public domain. Desclee & CIE, S. A., v. Nemmers, 190 F.Supp. 381, 389 (D.C.Wis. 1961). Cf. Field v. True Comics, 89 N.Y.S.2d 35 (N.Y.Sup.Ct.1949). To allow these appellees relief on an alterna-

---

2. Chafee, "Unfair Competition," 53 Harv. L.Rev. 1289 at 1318 (1940), finds justification for this single exception.

3. It is urged, however, that the holding below must be sustained because the period of first call granted by the exclusive license is within the term of monopoly contemplated by the copyright statute.

That is, of course, true as to programs protected by copyright. But the vice of the argument lies in what it ignores. To the extent that the licenses confer rights beyond those granted by copyright law and protect programs not copyrighted, they counter the federal policy of free access and must therefore yield.

tive ground not substantially differing in gravamen from other relief foreclosed in operative effect by the Supreme Court's explicit holding would be to enshrine form at the expense of substance.

In sum,

" 'The general rule of law,' says Mr. Justice Brandeis [International News Service v. Associated Press, supra, 248 U.S. at 250, 39 S.Ct. 68], 'is, that the noblest of human productions—knowledge, truths ascertained, conceptions, and ideas—become after voluntary communications to others, free as the air to common use.' The Constitution and Congress have made some exceptions to this general rule, by the patent and copyright laws. They have rewarded inventors and authors for their creativeness by granting them monopolies for a limited time and under carefully fixed conditions. The courts will be creating new and perpetual monopolies of their own if they enjoin non-passing-off appropriation of unpatented and uncopyrighted material. This they are properly reluctant to do. They may want to stop a particular defendant but if so they ought to stop everybody." [4] Chafee, Unfair Competition, 53 Harv.L.Rev. 1289, 1318 (1940).

IV

■ It could be contended, however, that the community antenna is misappropriating, "reaping where it has not sown," and therefore this court should protect a "quasi property right" of the kind involved in International News Service v. Associated Press, supra, 248

U.S. 215, 39 S.Ct. 68 (1918). But that case, oft held by the Second Circuit as applicable only to its special facts [5] is readily distinguishable. International News involved news which for practical reasons is not subject to copyright. Here, on the other hand, much of the material is copyrighted. International News involved an "implied misrepresentation"; here, as we have already seen, there is none. Perhaps most significant for purposes of bringing an action, International News involved an action brought by the originator; here the action is brought by an exclusive licensee.[6] In short, few of the considerations impelling the result in International News are present here. On the other hand, many reasons militating against such a result are.

True, the activities of the community antenna could be described as " * * * inconsistent with a finer sense of propriety * * * " (248 U.S. at 257, 39 S.Ct. at 79). But to grant appellees relief without Congressional authorization on other grounds not consistent with the copyright act is, in effect, to recognize a new protectible interest. To quote from Justice Brandeis, dissenting:

"Such taking and gainful use of a product of another which, for reasons of public policy, the law has refused to endow with the attributes of property, does not become unlawful because the product happens to have been taken from a rival and is used in competition with him." [248 U.S. at 258, 39 S.Ct. at 79] * * * "The unwritten law possesses capacity for growth; and has often satisfied new demands for justice by invoking analogies or by ex-

4. The District Court noted that a lack of national uniformity would be conceivable under its holding. Cable Vision Inc. v. KUTV, supra, 211 F.Supp. at 57. The result we reach assures nationwide uniformity.

5. G. Ricordi & Co. v. Haendler, 194 F.2d 914, 916 (2d Cir. 1952) ; Cheney Bros. v. Doris Silk Co., 35 F.2d 279, 280 (2d Cir. 1929); R.C.A. Mfg. Co. v. White-

man, 114 F.2d 86, 90 (2d Cir. 1940); Millinery Creators Guild v. Federal Trade Commission, 109 F.2d 175 (2d Cir. 1940).

6. Other grounds of distinction relevant to the factual situation at hand may be found in Intermountain Broadcasting and Television Corp. v. Idaho Microwave, Inc., 196 F.Supp. 315 (D.C.Ida.1961).

panding a rule or principle. This process has been in the main wisely applied and should not be discontinued. Where the problem is relatively simple, as it is apt to be when private interests only are involved, it generally proves adequate. But with the increasing complexity of society, the public interest tends to become omnipresent; and the problems presented by new demands for justice cease to be simple. Then the creation or recognition by courts of a new private right may work serious injury to the general public, unless the boundaries of the right are definitely established and wisely guarded." (248 U.S. at 262–263, 39 S.Ct. at 81)

More important, however, is another consideration urged by Justice Brandeis:

"Courts are ill-equipped to make the investigations which should precede a determination of the limitations which should be set upon any property right in news or of the circumstances under which news gathered by a private agency should be deemed affected with a public interest. Courts would be powerless to prescribe the detailed regulations essential to full enjoyment of the rights conferred or to introduce the machinery required for enforcement of such regulations. Considerations such as these should lead us to decline to establish a new rule of law in the effort to redress a newly disclosed wrong, although the propriety of some remedy appears to be clear." (248 U.S. at 267, 39 S.Ct. at 82)

Grant that the conclusion reached by the District Court would appear to be consistent with the National Communications policy as formulated by the F.C.C.[7] But as the District Court recognized, F.C.C. policy is " * * * not determinative of the issues of the present case * * * " Cable Vision, Inc. v. KUTV, supra, 211 F.Supp. at 55. And it should be emphasized that it is Congress and those whom it delegates who are charged with regulation in the public interest. Congress may, after weighing the competing interests involved, find it to be good policy to grant an additional remedy. But the courts are not charged by our constitutional system as arbiters of good policy. That function is reserved to Congress. In short, while it makes an appealing picture to see courts and administrative agencies hand in hand redeeming national communications policy, the fact remains that it is not the proper function of courts to do so.[8]

## V

All this is not to say that appellees are necessarily without remedy. They may (if able to meet the requirements hereinafter specified) be able to maintain an action for infringement of those programs protected by statutory copyright and to prosecute a claim for common law copyright violation as to any others which they contend have not yet been "published" within the contemplation of the law of common law copyright.[9]

It is settled law that the copyright owner is an indispensable party

---

**7.** 47 C.F.R. § 73.132 Territorial exclusivity. "No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization which prevents or hinders another station serving substantially the same area from broadcasting the network's programs not taken by the former station, or which prevents or hinders another station serving a substantially different area from broadcasting any program of the network organization.

This section shall not be construed to prohibit any contract, arrangement, or understanding between a station and a network organization pursuant to which the station is granted the first call in its primary service area upon the programs of the network organization.

**8.** Other considerations supporting the result we reach are noted by Chafee, supra n. 2 at 1317–1321.

**9.** But cf. Z Bar Net, Inc. v. Helena Television, Inc., 125 U.S.P.Q. 595 (1960).

to enforcement of a copyright claim. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). But overstrict application of this doctrine led to sometimes harsh results where there had been merely a partial assignment of the copyright subject matter. Therefore it has been held that while an exclusive licensee may not alone maintain an in-infringement action (Widenski v. Shapiro, Bernstein & Co., Inc., 147 F.2d 909 [1st Cir. 1945]), he may do so, however, if he joins the copyright owner (Manning v. Miller Music Corp., 174 F.Supp. 192 [D.C.S.D.N.Y.1959]; Field v. True Comics, Inc., 89 F.Supp. 611 [D.C.S.D. N.Y.1950]) and may even join the owner as an involuntary party. Pratt and Whitney v. United States, 139 Ct.Cl. 540, 153 F.Supp. 409 (Ct.Cl.1957); Collins v. Hupp Motor Car Corp., 22 F.2d 27 (6th Cir. 1927).[10] These cases have followed the doctrine of Independent Wireless Co. v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), which applied equitable principles in permitting an exclusive licensee to redeem his interest in an infringement action by joining the owner. As the court there said:

> "It seems clear * * * that the owner of a patent, who grants to another the exclusive right to make, use * * * which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee * * * to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it. * * * [T]he implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by

the licensee of the monopoly which by personal contract the licensor has given." (269 U.S. at 469, 46 S.Ct. at 169, 170)

\* \* \* \* \* \*

> "By a request to the patent owner to join as coplaintiff, by notice of the suit after refusal and the making of the owner a coplaintiff, he is given a full opportunity, by taking part in the cause, to protect himself against any abuse of the use of his name as plaintiff, while, on the other hand, the defendant charged with infringement, will secure a decree saving him from multiplicity of suits for infringement." (269 U.S. at 474, 46 S.Ct. at 171)

In conclusion, we hold that unless appellees are able to demonstrate a protectible interest by virtue of the copyright laws or bring themselves within the contemplation of some other recognized exception to the policy promoting free access to all matter in the public domain, they cannot prevail. Accord, Desclee & CIE, S. A., v. Nemmers, 190 F. Supp. 381 (D.C.Wis.1961). Cf. R.C.A. Mfg. Co. v. Whiteman, 114 F.2d 86 (2d Cir. 1940), cert. den. 311 U.S. 712, 61 S.Ct. 393; G. Ricordi & Co. v. Haendler, 194 F.2d 914 (2d Cir. 1952); Cheney Bros. v. Doris Silk Corp., 35 F.2d 279 (2d Cir. 1929), cert. den. 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145. Relief beyond what the copyright laws confer must be sought from Congress, not the courts. Globe Newspaper Co. v. Walker, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096 (1908); Hills & Co. v. Hoover, 220 U.S. 329, 337, 31 S.Ct. 402, 55 L.Ed. 485 (1911).

The judgment is vacated and the cause is remanded to the District Court to permit appellees to amend their counterclaim if they are able.

---

10. These principles from patent law are properly applied to copyright law. Widenski v. Shapiro, Bernstein & Co., supra, 147 F.2d at n. 2 p. 911.