173 So.2d 469 (1965)
HERALD PUBLISHING COMPANY, a corporation, Appellant,
v.
FLORIDA ANTENNAVISION, INC., a corporation, Appellee.
No. F-353.
District Court of Appeal of Florida. First District.
April 1, 1965.
*470 Thomas Sale, Jr., and Davenport, Johnston, Harris & Urquhart, Panama City, for appellant.
Logue & Bennett, Panama City, for appellee.
WIGGINTON, Judge.
Appellant brought suit seeking an injunction and a money judgment for damages allegedly suffered as a result of the alleged tortious conduct and activities of appellee. From the final judgment dismissing with prejudice appellant's second amended complaint for failure to state a cause of action, this appeal is taken.
From the allegations of the complaint the following salient facts appear. Appellant is a corporation engaged in the business of broadcasting television programs over its facilities in Panama City. Appellant is affiliated with the National Broadcasting Company and American Broadcasting Company with whom it has contracts for broadcasting network programs. Appellant also holds contracts with the owners or distributors of syndicated film programs especially produced for broadcasting by commercial television stations, and motion pictures which have been converted to use for television broadcasting. The program material acquired by appellant is under contracts which provide the right to first broadcast the material in the area served by it. Under the terms of its contracts, or by industry custom and practice, no one else has the right to broadcast the programs in that area either simultaneously with or prior to their release by appellant.
Five other television broadcasting companies operating within a radius of approximately one hundred miles of appellant's facilities are affiliated with the three major national television networks and have contracts under which they also broadcast much of the same program material broadcast by appellant at times either simultaneously with or prior to the hour and date on which appellant transmits its broadcasts. All such program material broadcast by the various television companies is copyrighted under the laws of the United States, and is broadcast by facilities which are under the direct supervision and control of duly constituted administrative agencies of the Federal Government. The complaint does not allege that the programs or material telecast by appellant is protected under copyrights owned by appellant, so we are not here concerned with any question of infringement.
Appellee Florida Antennavision, Inc., is engaged in the business of operating a commercial enterprise which consists of the construction and installation of a closed circuit cable television distribution system in the City of Panama City where appellant's station is located. The system operated by appellee includes a large antenna located outside of Panama City which is constructed in such manner as to enable it to pick up television signals from the other broadcasting companies operating within a radius of one hundred miles of Panama City. Attached to the antenna is certain electronic equipment which receives and amplifies television signals originating at the other broadcasting stations, which amplified signals are transmitted over a cable installed on electric light poles along the streets of Panama City. From appellee's cable, connections are made into the home television sets of subscribers who pay a service charge permitting them to receive the programs originating outside of Panama City which they are incapable of receiving by use of a standard antenna.
*471 Appellee has no contracts with the national television networks or with any of the owners and distributors of the program material broadcast by television stations which it receives, amplifies, and sends out over its facilities, nor does it pay any charge to the owners or distributors of such program material. As a result of its activities, appellee picks up from the surrounding television stations, amplifies, and sends out over its facilities to its subscribers some of the same programs and program material which appellant has the exclusive right to first broadcast in Panama City. Many of the programs and much of the program material so furnished by appellee to its Panama City subscribers is on a date or at an hour simultaneously with or prior to the broadcast of the same programs or program material by appellant. Since appellee is not engaged in the television broadcasting business, its operation is not subject to regulation by any agency of government, and it therefore is not accountable to any regulatory body for the manner in which it conducts its business.
The complaint alleges that appellee, by its manner of operation, is wrongfully depriving appellant of a part of its listening and viewing audience by making available to television viewers in Panama City from broadcasting stations within a radius of one hundred miles the same programs and other material which appellant has exclusive contracts to telecast in the Panama City area. It is alleged that this action on the part of appellee diminishes the amount of advertising revenue which appellant would otherwise be able to charge and obtain from its advertisers based upon the number of viewers exclusively reached by appellant's broadcast signal. Appellant alleges that appellee is guilty of unfair competitive practices in that it transmits to the viewing public of Panama City, at no cost to itself, programs and program material which appellant is required to purchase for a valuable consideration; that appellee's activities constitute an interference with appellant's lawful and advantageous business relationships with the owners and distributors of the program material transmitted by appellant over its station in that such owners and distributors are prevented from assuring appellant that it will have the first and exclusive right to telecast such programs in the Panama City area and enjoy the benefits derivable therefrom; that if allowed to continue, appellee's operations will reduce and destroy the valuable property rights which appellant has in the programs and program material purchased by it for telecasting over its Panama City facilities. The complaint prays for an injunction restraining appellee from operating in such manner as to injure appellant in the particulars alleged in the complaint, and a money judgment for the damages suffered as a result of appellee's tortious conduct. It is based upon these allegations and prayer for relief that appellant contends its amended complaint states a cause of action, and that the chancellor erred in dismissing it with prejudice.
It appears to be appellant's basic position that even though it owns no copyrights of the programs it telecasts over its facilities, that under the circumstances alleged it nevertheless possesses a special property right in the subject matter of its telecasts which the law will protect against unfair competition and interference with its favorable contractual relations between it and those from whom it purchases the right to broadcast its material. In support of this position appellant cites and relies upon the case of International News Service v. Associated Press.[1] In this case Associated Press brought suit to enjoin International News Service from activities alleged to constitute unfair competition. The facts established that Associated Press, at great expense to itself, gathered and furnished to its subscribers news items which appeared in the Associated Press bulletin and in early editions of newspapers published by its subscribers. INS, a competing news gathering *472 and distribution organization, copied the Associated Press dispatches and transmitted them by cable across the country for almost simultaneous release with the dispatches of Associated Press, palming off the news dispatches as its own and for which it collected revenue from its subscribers. In holding the actions of INS to constitute unfair competition for which an injunction issued, the court said:
"* * * The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with complainant's right to make merchandise of it, may be admitted; but to transmit that news for commercial use, in competition with complainant,  which is what defendant has done and seeks to justify,  is a very different matter. * * * Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself and a court of equity ought not to hesitate long in characterizing it as unfair competition in business."
There are basic distinctions between the facts in the INS case and those alleged in the complaint sub judice. INS and AP were competitors in the same field of activity and furnished identical services to their respective subscribers. In our case appellant is a television broadcasting company deriving its revenues from sponsors who pay for advertising exhibited by appellant before, during and after its regularly scheduled telecasts. Appellee has no facilities for, nor is it engaged in the business of, telecasting programs or other material. It does not compete with appellant for sponsors interested in advertising over television facilities, but derives its revenues solely from services rendered its subscribers. In the INS case the evidence revealed that it not only pirated the work product of AP which had been produced at great expense to the latter, but it palmed off such work product to its subscribers for a compensation with the implied misrepresentation that it was the work product of INS. In the case sub judice appellee is not charged with any such reprehensible conduct as was condemned in the INS case, but merely passes on to its subscribers the television programs it receives on its antenna from the air waves which are in the public domain and available for anyone with a sufficiently equipped antenna to receive and enjoy.
Appellant has cited numerous other decisions passing upon causes of action predicated upon unfair competition and interference with contractual relations. Many of these cases involve radio broadcasts and the exhibition of motion picture films. We have carefully studied these decisions but are of the view that the factual settings in which the various rulings of law have their roots are so clearly distinguishable from the facts in the case sub judice, and the principles applicable thereto, as to render those decisions of little persuasive force in the resolution of the issues here presented.
The only case factually in point in all material respects with the one now before us for consideration is that of Cable Vision, Inc. v. KUTV, Inc.[2] In this case television station KLIX of Twin Falls, Idaho, contracted with certain television broadcasting stations in Salt Lake City, by the terms of which it received by wire the programs telecast by the Salt Lake City stations and rebroadcast those programs in the Twin *473 Falls area. KLIX facilities permitted simultaneous broadcast of only one station at a time. The programs from the other Salt Lake City television stations being released at the same time were either ignored by KLIX or were filmed and released at a later time in the Twin Falls area. The television programs emanating in Salt Lake City television stations could not be received in the Twin Falls area by the use of conventional rooftop television antennae. Cable Vision, Inc. of Twin Falls erected a community antenna and engaged in the same business as the appellee in the case sub judice. It received the television programs being telecast by the stations in Salt Lake City and transmitted them to its subscribers in Twin Falls simultaneously with the original broadcast. This activity deprived KLIX of a part of its viewing audience as well as the advantageous opportunity of releasing at a later time television programs originating in the Salt Lake City television stations. KLIX sought and was awarded an injunction by the Federal District Court restraining Cable Vision's activities in the Twin Falls area on the ground of unfair competition and interference with favorable contractual relations. In support of its injunction the District Court held:
"The Court is of the opinion that such exclusive rights for the first showing of syndicated or feature films are entitled to protection under the circumstances here presented  under the doctrines of unfair competition and tortious interference with contractual relationships  for the same reasons that rights to broadcast network programs are entitled to protection.
"In our memorandum of July 26, 1962, the Court speaking of the common law doctrine of tortious interference with contractual rights, said, `one who contractually acquires * * * The exclusive right to the first call of entertainment programs is entitled to protection * * * against acts of third persons which tortiously and unfairly prevent exploitation of the right or diminish its value.'
"The cases cited thereafter dealt with situations in which the tortfeasor had induced in some way the promisor to breach his contract.
"In this case, the community antenna service has not induced any breach of contract by the networks or the film suppliers, who are the grantors of KLIX's right of exclusivity. However, the community antenna's pick up of programs from Salt Lake stations and from other stations in the area for its competitive purposes in the Twin Falls community defeats or impairs the purpose and the value of the exclusive rights of KLIX in such programs.
"It has long been established that the doctrine of tortious interference with such valuable contractual rights is not limited to third persons who in some way induce the grantor of the right to grant similar rights to them in violation of the exclusivity agreement. On the contrary, it has long been recognized that any one who so tortiously and unfairly interferes with such an economically advantageous contractual relationship as to make its performance impossible or more onerous and thus to impair or defeat the value of the right is liable to the grantee of the right. * * *"[3]
The decision of the District Court related above was appealed to and reversed by the United States Circuit Court of Appeals for the Ninth Circuit.[4] The decision of reversal is grounded upon the proposition that unless protected by the copyright laws of the United States, all programs and program material telecast by television *474 stations lie in the public domain and may be received and enjoyed with impunity by the general public, so long as there is no attempt to appropriate good will of the broadcaster, or to deceive. The fact that one receives and utilizes the telecast for commercial purposes by receiving, amplifying, and transmitting it to others for a compensation does not make such activity subject to the condemnation of unfair competition or interference with favorable contractual relations enjoyed by the television broadcasting company. In its decision of reversal the Circuit Court of Appeals said:
"* * * Save for the limited protection accorded the creator of literary and intellectual works under the Copyright Act or its exceptions  and here appellees concede they are not asserting a claim for copyright infringement  anyone may freely and with impunity avail himself of such works to any extent he may desire and for any purpose whatever subject only to the qualification that he does not steal good will, or, perhaps more accurately stated, deceive others in thinking the creations represent his own work.
"Here the District Court enjoined activity that lacked the element of palming off. It is incontrovertible that all broadcasts are received and distributed by the community antenna without any modification of program content; therefore no question of `implied misrepresentation' by failing to give the originator proper credit, a misrepresentation present in International News Service v. Associated Press, supra, 248 U.S. 215, 39 S.Ct. 68 63 L.Ed. 211] (1918), is involved in this case. We are clear that there is lacking that taint `necessary to turn a flavor into a poison' justifying judicial relief without Congressional authorization. To the extent, then, that the District Court holding extended a new protectible interest beyond what the copyright laws confer, it `* * * interfere[d] with the federal policy * * * of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.' Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 237, 84 S.Ct. 779, 782 [11 L.Ed.2d 669] (1964). This same principle likewise applies to appellees' claim of contract interference. Parties by the mere expedient of an exclusive contract can not `bootstrap' into existence rights from subject matter which at their source lie in the public domain. Desclee & CIE, S.A., v. Nemmers, 190 F. Supp. 381, 389 (D.C. Wis. 1961). Cf. Field v. True Comics, 89 N.Y.S.2d 35 (N.Y. Sup. Ct. 1949). To allow these appellees relief on an alternative ground not substantially differing in gravamen from other relief foreclosed in operative effect by the Supreme Court's explicit holding would be to enshrine form at the expense of substance.
* * * * * *
"In conclusion, we hold that unless appellees are able to demonstrate a protectible interest by virtue of the copyright laws or bring themselves within the contemplation of some other recognized exception to the policy promoting free access to all matter in the public domain, they cannot prevail. * * * Relief beyond what the copyright laws confer must be sought from Congress, not the courts. Globe Newspaper Co. v. Walker, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096 (1908); Hills & Co. v. Hoover, 220 U.S. 329, 337, 31 S.Ct. 402, 55 L.Ed. 485 (1911)."[5]
Appellant reminds us that the decision of the Ninth Circuit Court of Appeals in the Cable Vision case is not binding on this Court, and importunes us to disagree with the conclusion therein reached. While it is readily conceded that decisions *475 of federal courts are not binding on state courts as regards questions of law which are exclusively within state court jurisdiction, it is our view that the force of the logic and reason expressed in the Cable Vision decision is inescapable. We therefore adopt the reasoning and conclusions reached by the Ninth Circuit Court of Appeals in the Cable Vision case as applicable to the case sub judice, and on the basis of such application we affirm the decree appealed.
STURGIS, C.J., and MURPHREE, JOHN A.H., Associate Judge, concur.
NOTES
[1] International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293.
[2] Cable Vision, Inc., et al. v. KUTV, Inc., the KLIX Corporation et al., 211 F. Supp. 47 (D. Idaho, S.D. 1962).
[3] Id. at 60-61.
[4] Cable Vision, Inc., et al. v. KUTV, Inc., the KLIX Corporation et al., 335 F.2d 348 (9th Cir.1964).
[5] Id. at 351, 352, 354.