■ FLAMINGO TELEFILM SALES, INC., Respondent, v. UNITED ARTISTS CORPORATION et al., Appellants.

APPEAL from a resettled order of the Supreme Court at Special Term, entered July 22, 1965 in New York County, which denied a motion by defendants from an order to dismiss the complaint.

MEMORANDUM BY THE COURT. Resettled order entered on July 22, 1965, denying defendants' motion to dismiss the complaint, affirmed, with $30 costs and disbursements to the respondent. While the complaint could have been more articulately drafted, we conclude that it is adequate to resist the motion to dismiss for insufficiency. If the complaint does nothing else, it sufficiently sets forth a cause of action in conversion. It alleges that the defendant, United Artists, " did wrongfully and knowingly misappropriate and convert a 16 mm positive print of the [plaintiff's] English language version " of a specific motion picture. While such language is conclusory, it is buttressed by the further allegation — clearly gathered from the complaint — that the specific print was given to the defendant, United Artists, for limited use and that such limited use did not include its use for television exhibition. Coupled with such allegations, the further charge that United Artists delivered the print to the other defendants for such proscribed use makes out a sufficient cause of action in conversion (see *Kittredge* v. *Grannis*, 244 N. Y. 168, 176).

STEUER, J. (dissenting). The original complaint was formerly before this court (22 A D 2d 778). That complaint was dismissed with leave to replead. Special Term has interpreted the decision as a holding that plaintiff has a cause of action but, due to the inartistic wording of the allegations, the required degree of clarity was missing and necessitated a repleading. That is not the purport of the decision. The holding was that the facts were not alleged with sufficient particularity to spell out any cause of action at all but, from what was set out, it might be that plaintiff did have a cause of action and, in the interest of justice, the court permitted it to set out the necessary facts. At the same time, this court indicated what would be necessary to allege under

several theories which apparently plaintiff was employing as the basis for recovery.

Plaintiff now alleges that DDL (an abbreviation for an Italian corporation) produced an original motion picture in the Italian language called "Nights of Caberia" and that it had the exclusive right to the physical property consisting of the film and sound track, as well as the right to license the showing of the picture by exhibition or through television. The complaint further alleges that by mesne aasignments plaintiff acquired so much of DDL's rights as embraced the showing of the picture in the United States on television for a period of five years. Included in the rights which plaintiff acquired was access to the original film for making positive prints and the right to make an English version sound track. Plaintiff made such a sound track. Plaintiff thereupon licensed the picture with its English language sound track to several television exhibitors and derived a considerable revenue therefrom. The complaint further alleges that defendant United Artists delivered a print of the film with plaintiff's English sound track to certain other defendants for purposes of televising the same, and the same were shown, in whole or in part. Separate causes of action are alleged for showing by other defendants.

In my opinion these facts do not constitute a cause of action. In our law the protection afforded the creator of a literary or artistic production is by way of copyright. The complaint does not allege that DDL, as the creator of the film, or plaintiff, as the creator of the English sound track, ever obtained a statutory copyright, and there is no claim that this is an action so based.

Plaintiff argues that the State affords protection in this field and, to a limited extent, this is correct. The areas in which resort to protection dehors the Federal copyright laws is found fall into three general classes: common-law copyright, unfair competition, and where the material from its nature is not susceptible of copyright.

Common-law copyright is limited to the situation where the author or creator has not published or authorized publication (Nimmer, Copyright [1965], p. 192; *Tiffany Prods.* v. *Dewing,* 50 F. 2d 911). The principle is simple and direct — if the author has not desired to publish or has been unable to, no one can steal the fruits of his work by publishing ahead of him (see *A. J. Sandy, Inc.* v. *Junior City,* 17 A D 2d 407, 409). But if, as it is here alleged, the creator has published, there is no common-law copyright. Plaintiff argues that there may be an issue as to what constitutes publication. There may be, but not here, where complete publication is alleged.

Unfair competition as used in this discussion means the classic example — palming off one's own creation as that of the plaintiff's. Equity can give relief in such a situation (see *Miller* v. *Universal Pictures Co.,* 11 A D 2d 47, 49). Obviously this has nothing to do with copyright and just as obviously has no application to any fact pleaded in this complaint.

It is quite true that the principles of unfair competition as expanded in commercial cases have been applied by State courts in cases involving literary or artistic productions (*Metropolitan Opera* v. *Wagner-Nichols Recorder Corp.,* 199 Misc. 786, affd. 279 App. Div. 632; *Mutual Broadcasting System* v. *Muzak Corp.,* 177 Misc. 489; *Twentieth Century Sporting Club* v. *Transradio Press Serv.,* 165 Misc. 71; *C. B. S.* v. *Documentaries Unlimited,* 42 Misc 2d 723). In all of these cases the subject matter was not susceptible of copyright. The rendition of an aria, the technique of a virtuoso, or the delivery of an orator cannot be copyrighted. Until fairly recently their artistic endeavors were perishable and once given were forever lost. Now they can be mechanically recorded and, if so, the resultant disk or tape can be copyrighted. What these cases hold is that the performance may not be pirated by recording it and

selling the recording without the performer's permission. In reaching this conclusion the courts had before them a knotty problem not unlike that involved in the protection of an idea which is not patentable. In reaching the conclusion that the performance is entitled to protection from unauthorized mechanical reproduction, no question of the protection afforded copyrightable material is involved and the law evolved from the decisions cannot be applied to a copyright situation. Here it is indisputable that the film could have been copyrighted (U. S. Code, tit. 17, § 5; *Benny* v. *Loew's*, 239 F. 2d 532, 535). Moreover, the plaintiff itself, as distinct from its licensor, could have copyrighted the translation making up the sound track (*Toksvig* v. *Bruce Pub. Co.*, 181 F. 2d 664).

Lastly there is the question of conversion. The physical chattels, that is, the film itself and the celluloid sound track are, of course, capable of being converted. And doubtless plaintiff sought to allege such a conversion. However, no facts are alleged in support of this conclusion. Conversion is alleged to have been perpetrated by the defendant's delivery of the film to exhibitors. But it is not alleged that the film delivered was the property of the plaintiff, nor, despite the caveat in the decision on the original complaint, were any facts alleged that would show that defendant's possession of the film was in any way tortious.

The complaint does not state a cause of action. The order denying the motion to dismiss should be reversed and the complaint dismissed, with costs and disbursements to the appellant.

Rabin, J. P., Stevens and Staley, JJ., concur in Memorandum by the court; Steuer, J., dissents in opinion.

Resettled order affirmed, etc.