

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

November 4, 1974

The Honorable James R. Arnold
Administrator
Governor's Office of Traffic Safety
P. O. Box 13449, Capitol Station
Austin, Texas 78711

Opinion No. H- 440

Re: Whether film produced for
state agency may be reproduced
by private business enterprise
and sold for a profit where the
film is in the public domain.

Dear Mr. Arnold:

You have asked whether the conditions attached to a federal grant,
used by the Texas Education Agency to develop and produce traffic safety
multimedia films and materials for driver education classes, permit
reproduction and distribution of the film and materials by a private business
concern to the public at a profit.

The grant was approved by the National Highway Traffic Safety
Administration (NHTSA) subject to the conditions stated in its Consultant
Policy Memorandum No. R6-B-101 of February 14, 1972, para. 6(g)

> (1) Before publication or printing, the final draft
> report shall be submitted to the Regional Office
> for review and concurrence.

> . . . .

> (2) After a report has been accepted for publication
> or printing, it is to be regarded as information in the
> public domain and its further use does not require
> approval. Accordingly, the published version of the
> final report shall not be copyrighted, nor contain any
> restrictions which prohibit distribution and reproduc-
> tion.

As used herein, the term report generally refers to
any result of consultant contracts, such as surveys,
studies, manuals, guides, _films_, . . . etc.

Under these terms, the Texas Education Agency executed a contract
with a private production firm providing for the development of five (5)
driver education lessons and other materials adapted for use on certain
multimedia equipment owned by the State.   The final product due under
the contract included "one (1) master copy of each lesson and fifty (50)
sets of each lesson.   Film strips, films, and tapes must be provided
with reels and in color coded containers adaptable to state owned storage
equipment."

The contract also provided that:

Art. II (A)
The Texas Education Agency and the National Highway
Safety Bureau would retain all copyrights.   Title to
all materials developed including master prints,
internegatives and scripts will be transferred to the
TEA upon completion of Contractor's tasks.

Art. IV (B)

All programs, systems, designs or other materials
developed by Contractor pursuant to this contract
shall be the property of TEA, but Contractor shall
have the right to use such programs for other purposes,
provided no confidential information is disclosed.   It
is distinctly understood that TEA, and any other
agency of the State of Texas shall have the right   to
use, reproduce, or publish any or all of such programs,
systems, designs or other materials developed under
the contract for any purpose   without permission of
Contractor, and without expense or charge.

In our judgment, the rights of parties under the State contract are
subject to the conditions of the funding grant as expressed in NHTSA's

Policy Memorandum N. R6-B-101. The overriding condition, recognized in the production contract, is that the product of the grant, once accepted by NHTSA's regional office for publication, is forever and unconditionally in the public domain, and may be freely copied and used by any person or agency desiring to do so without prior approval or charge for the right to copy.

The Regional Administrator of NHTSA explained the purpose and effect of its policy of requiring all reports, including films, to be dedicated to the public domain:

> Our Consultant Policy Memorandum R6-B-101 relates mainly to copyright aspects, in that no materials developed shall be copyrighted nor contain any restrictions which prohibit distribution and reproduction. If [the Contractor], for example, sold a copy of the multimedia materials to an agency, whether in Texas or outside the State, then any or all of it could be reproduced or modified or used in anyway without prior approval.

Since the contract has been fulfilled and the materials due the State under its provisions have been published and distributed, the film and materials produced under the agreement may be copied and marketed by anyone, including the original contractor. The materials are now in the public domain and may be reproduced and distributed by a private business concern for a profit. G. Ricordi v. Haendler, 194 F.2d 914 (2nd Cir. 1952). Neither the State nor the original contractor has the right to exclude any other person in possession of the materials from copying them, or using them.

You have also asked whether the State must accept competitive bids before deciding who will be "permitted" to make copies of the films and material for public distribution. This would be the case if, under the contract, the State could retain a "property" interest in the materials after they were delivered. Under our interpretation of the grant conditions, the only property interest left to the State is the right to control access and use of the copies it owns. Expressly precluded is the right to "sell"

reproduction rights in the driver education materials.  Anyone who obtains the materials, whether from the State or otherwise, may copy and distribute them without prior approval.  Consequently, competitive bidding is unauthorized if used as a means to restrict the right to reproduce the films developed under the federal grant.

However, if the State itself intends to purchase copies in addition to those produced under the original contract it must comply with laws relating to competitive bidding.  See e.g.,  Article 664-3, V.T.C.S., State Purchasing Act of 1957.

### SUMMARY

The conditions attached to a federal grant used by the Texas Education Agency to develop and produce traffic safety films and materials for driver education classes permit reproduction and distribution of the films and materials by a private business concern at a profit.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee